Brenda C. OSBORNE, Appellant

v.

Steven H. KEENEY; Carolina Casualty Insurance Company; and Monitor Liability Managers, Inc., Appellees

and

Steven H. Keeney, Appellant

v.

Brenda C. Osborne; Carolina Casualty Insurance Company; and Monitor Liability Managers, Inc., Appellees.

Nos. 2010–SC–000397–DG, 2010–SC–000430–DG.

Supreme Court of Kentucky.

Dec. 20, 2012.

Rehearing Denied June 20, 2013.

Leroy E. Sitlinger, Jr., Sitlinger, McGlincy, Theiler, Louisville, KY, for appellant/appellee Brenda C. Osborne.

Andrew Graham Beshear, Matthew W. Breetz, Stites & Harbison, PLLC, Sheryl G. Snyder, Griffin Terry Sumner, Frost, Brown, Todd LLC, Louisville, KY, for appellee/appellant Steven H. Keeney.

Douglas Cain Ballantine, Amy Olive Wheeler, Stoll, Keenon, Ogden, PLLC, Louisville, KY, for appellees Carolina Casualty Insurance Company and Monitor Liability Managers, Inc.

Opinion of the Court by Chief Justice MINTON.

Brenda Osborne sued her attorney, Steven H. Keeney, claiming he breached his professional duty to her by failing to file suit against Clifford Quesenberry before the statute of limitations expired. Because of Keeney's breach, Osborne alleged she lost the ability to recover from Quesenberry for losses she suffered as a result of Quesenberry's crashing his airplane into her home. A circuit court jury decided this legal malpractice case in Osborne's favor, resulting in a judgment against Keeney in excess of $5 million. The Court of Appeals affirmed the judgment, in part, but vacated a large portion of the damage award.[1]

We granted Osborne's and Keeney's separate petitions for discretionary review to consider three important issues presented in this case: first, whether the suit-within-a-suit procedure as approved by Kentucky precedent remains the proper method for litigating legal malpractice under the circumstances presented in this case; second, whether the physical impact rule—a rule. firmly embedded in Kentucky tort law—remains the proper threshold standard for claims involving emotional distress; and third, whether lost punitive damages should be recoverable in legal malpractice actions, an issue of first impression in Kentucky.

As to the first issue, we reaffirm our precedent holding the proper method for trying legal malpractice claims is the suit-within-a-suit, which requires the trial court to instruct the jury as if it were trying the underlying tort case before instructing the same jury on the legal malpractice claim. The trial court in the case at hand properly tried the case using the suit-within-a-suit method but erred when it failed to instruct the jury on Quesenberry's negligence. Lacking a jury determination on this issue, Osborne failed to establish that Keeney's malpractice proximately caused her loss. And the Court of Appeals erred by upholding the trial court's instruction on this issue. So we reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Because the second issue is likely to recur in the event of a retrial on remand, we take this opportunity to address the physical impact rule and hold that it is no

---

1. The Court of Appeals appropriately resolved the issue concerning Carolina Casualty in this action. This issue, whether the trial court retained jurisdiction over Osborne's amended complaint adding Carolina Casualty as a defendant nineteen days after the entry of judgment, is rendered moot as a result of our decision today. Osborne, following proper procedure, may seek to add Carolina Casualty as a party on remand.

longer the threshold standard in Kentucky law for claims involving emotional distress. Today, we clarify the rule and now require that emotional-distress plaintiffs first satisfy the elements of a general negligence claim. Further, a plaintiff will not be allowed to recover without showing, by expert or scientific proof, that the claimed emotional injury is severe or serious. Put simply, a plaintiff must show that the defendant was negligent and that the plaintiff suffered mental stress or an emotional injury, acknowledged by medical or scientific experts, that is greater than a reasonable person could be expected to endure given the circumstances.

Because the third issue is also likely to recur in the event of a retrial on remand, we hold that lost punitive damages are not recoverable against an attorney in a legal malpractice case. The purpose for punitive damages is clear in this jurisdiction, and transposing them into a form of compensatory damages to allow a legal malpractice plaintiff to recover thwarts that purpose. By disallowing recovery for lost punitive damages, we align the jurisprudence in this jurisdiction with a growing number of states.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

### A. The Airplane Crash.

In October of 2002, while Osborne was sitting alone at home watching TV, an airplane crashed through her roof, resulting in significant damage to the home and its contents. The plane had just departed from a nearby airport. The pilot, Quesenberry, experienced mechanical difficulties with the plane before takeoff. By his estimation, the engine drive-pump had lost its prime. An airport mechanic offered to help, but Quesenberry declined and said he had encountered the problem a few times before. Attempting a quick fix to return

home, Quesenberry squirted fuel into the air-intake of the left engine. The engine backfired, catching fire. Quesenberry extinguished the flames and again squirted fuel into the engine in order to get it to start. Finally, the engine started and Quesenberry took off.

Shortly after leaving the runway, at an altitude of approximately fifty feet, Quesenberry lost power to the left engine and began a rapid descent. He was able to steer the plane to avoid potentially greater damage on the ground below, but he did not avoid hitting Osborne's home. The plane sliced through her chimney, inflicted significant damage to the second story, and set the house afire before coming to rest in the adjacent street. Osborne said she heard a "sonic boom" and ran outside to discover her home on fire. No debris from the airplane or the house struck Osborne in any manner, and she suffered no physical injury as a result of the crash.

### B. Osborne's Emotional Distress Claim.

Shortly after the crash, Osborne was transported to a local hospital where Dr. Rhonda Sively, an internist, treated her. Osborne had suffered for years from anxiety, depression, hypertension, insomnia, and diabetes. Dr. Sively testified that Osborne was in obvious shock, and her preexisting ailments were exacerbated. According to the doctor, Osborne was emotionally unstable as a result of the destruction of her home and her personal belongings. For an extended period of time after the crash, Osborne received treatment.

### C. Keeney's Representation and Malpractice Trial.

Osborne retained Keeney approximately six months after the crash. Shortly after being hired, Keeney arranged a meeting

with an adjuster for Osborne's homeowner's insurance carrier. Keeney continued discussions that Osborne initiated with her carrier regarding her homeowner's claims. Ultimately, Osborne received a series of checks from her homeowner's insurance carrier. And, under the terms of the engagement contract she signed with Keeney, Keeney took 20 percent of these insurance proceeds.[2] According to Keeney, this was a "front-loaded" fee arrangement; and Osborne would receive more from the claims to be asserted against Quesenberry. Payments totaling over $234,000 came from Osborne's homeowner's insurance.

In August of 2004—nearly two years after the crash—Keeney attempted to dissuade Osborne from proceeding with litigation against Quesenberry. By this time, the applicable one-year statute of limitations had expired. But Osborne insisted on going forward with litigation in hopes of receiving a substantial damages award. So Keeney filed a lawsuit against Quesenberry in state court in October 2004.

Quesenberry removed the case to federal court and claimed the action was barred by the applicable statute of limitations. Osborne claimed that she was unaware that the statute of limitations had expired.[3] Keeney, in an attempt to avoid summary dismissal, filed a motion requesting the federal court hold the case in abeyance because Osborne was mentally incapacitated. Keeney had evidence that Osborne was still suffering the emotional effects, not only of the airplane crash, but also from her preceding divorce and bankruptcy. After allowing Quesenberry to depose Dr. Sively and Osborne, the federal court denied the motion for abeyance and entered summary judgment for Quesenberry because the action was barred by limitations.

Keeney did not respond to Quesenberry's motion for summary judgment. And Keeney did not inform Osborne that a motion for summary judgment had been filed. Furthermore, Keeney did not answer interrogatories or participate in discovery leading up to the dismissal. The federal court went so far as to observe in a written order that Keeney had acted with "willfulness, bad faith[,] or fault"; was warned several times regarding his conduct; and that his conduct alone was sufficient to warrant a dismissal of Osborne's claim.

It was January of 2006 before Osborne became aware that her federal lawsuit against Quesenberry was dismissed. Dr. Sively, not Keeney, told Osborne. Dr. Sively had become aware of the dismissal through a conversation with Quesenberry's counsel. Without Osborne's knowledge, the federal court entered judgment against her for the cost of the dismissed action.

Osborne later filed this action against Keeney asserting breach of contract, legal malpractice, and fraud and deceit. The jury returned a verdict in Osborne's favor on all claims. The jury awarded Osborne the following damages: (1) $54,924.04 for loss of her personal property; (2) $500,000 for pain and suffering from the airplane crash; (3) $750,000 as punitive damages against Quesenberry; (4) $53,025.39 for legal fees paid to Keeney; (5) $250,000 for

2. Osborne alleged the contract she initially signed was only three pages. And she further argued that Keeney attempted to produce a wholly different, eight-page contract with novel terms later during his representation. We reference the initial engagement contract here.

3. Keeney argued Osborne was aware of the statute of limitations issue and supported the legal strategy to rely on incapacitation as a defense.

mental anguish resulting from Keeney's representation. And the jury awarded Osborne $3,500,000 in punitive damages against Keeney.

### D. The Decision of the Court of Appeals.

The Court of Appeals affirmed the judgment, in part, but reversed several aspects of the jury's verdict. The damages Osborne received for pain and suffering, both regarding the pilot's conduct and Keeney's representation, were vacated because there was no physical impact. Further, following a discussion of whether lost punitive damages [4] are recoverable under Kentucky law, the Court vacated the punitive damages against Quesenberry because Osborne did not prove them by clear and convincing evidence. And the Court reduced the punitive damages awarded against Keeney from $3,500,000 to $1,000,000 because that was the amount of punitive damages Osborne itemized in interrogatory answers before trial. We granted Osborne's and Keeney's separate petitions for discretionary review in this Court.

### II. ANALYSIS.

Taken together, Osborne and Keeney challenge several aspects of not only the decision of the Court of Appeals, but the trial court's rulings as well. Foremost, Keeney argues that the trial court erroneously denied his motion for directed verdict. By allowing Osborne's malpractice claim to go to the jury with arguably little evidence, Keeney claims the importance of proving the suit-within-a-suit is disregard-

ed completely. Additionally, Keeney disagrees with the trial court's refusal to instruct the jury on the underlying negligence claim against Quesenberry and the unwillingness of the Court of Appeals to address the issue. And Osborne petitions this Court either to find an impact for her emotional distress claim, or if we do not find a sufficient impact, abandon our prior jurisprudence and entertain crafting a new standard for claims involving emotional distress. Finally, Osborne claims that she should be entitled to recover from Keeney punitive damages she would have recovered from Quesenberry but lost as a result of Keeney's malpractice.

### A. Keeney's Motions for Directed Verdict Were Not Erroneously Denied.

Before delving into the record and the evidence presented at trial, it is appropriate to look first at the standard of review to be used by this Court when reviewing similar matters. The role of an appellate court, when reviewing evidence supporting a judgment entered upon a jury verdict, is limited. The Court must only determine whether the trial court erred in failing to grant the motion for directed verdict. In doing so, "[a]ll evidence which favors the prevailing party must be taken as true[;] and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence."[5] This Court, when reviewing a ruling on a motion for directed verdict, "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party."[6] Finally, "the appellate court

---

4. That is, those punitive damages that potentially would have been recovered if the tort claim against Quesenberry had been timely filed. They are considered "lost" because of the alleged malpractice on the part of Keeney.

5. *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky.1998) (*citing NCAA v. Hornung*, 754

S.W.2d 855 (1988)); *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459 (Ky.1990).

6. *Bierman*, 967 S.W.2d at 18 (*citing Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky.1992)).

must determine whether the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as the result of passion or prejudice." [7]

█ The fact that Osborne, as Keeney repeatedly argues, did not call a witness with personal knowledge of the crash is not sufficient to warrant a directed verdict to be returned for Keeney. The plaintiff, as master of her claim, is entitled to present the evidence she deems sufficient, credible, and persuasive. The jury is fully capable of weighing the value of the evidence presented and determining whether or not no witness with "personal knowledge" is damning to the plaintiff's case.[8] Basically, Keeney argues that Osborne only put on circumstantial evidence. We have held that "to entitle a plaintiff to go to the jury on circumstantial evidence[,] the essential proven facts upon which liability can be based must do more than suggest a possibility that the defendant was at fault." [9] That is, "the evidence must furnish some basis for the jury to decide that the probability of fault preponderates over the probability of innocence." [10] We believe Osborne met this burden.

█ In the instant case, the trial judge correctly refused to direct a verdict for Keeney.[11] Osborne presented evidence on the events that led to the airplane crash and the cause of the crash. Expert testi-mony was presented to show that the pilot was negligent. The pilot's attorney acknowledged liability on the part of his client. Taking into account all reasonable inferences and deductions supporting Osborne, there was ample evidence for the claim to overcome the hurdle of directed verdict and reach the jury because the evidence "substantially tends to support the cause of action." [12]

It cannot be said that there was a complete absence of proof on a material issue or that no disputed issue of fact existed. The case was properly given to the jury, and a directed verdict should have been denied. As such, the jury verdict, supported by reason instead of passion or prejudice, will not be overturned on these grounds.

## B. The Trial Court Committed Reversible Error by Improperly Instructing the Jury as to the Suit–Within–a–Suit.

██ Under Kentucky law, a plaintiff in a legal malpractice action has the burden of proving: "[ (]1) that there was an employment relationship with the defendant/attorney; [ (]2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage

---

7. *Id.* (citation omitted).

8. *See id.* ("It is not the function of the court to decide how much weight should be given his testimony.... Hence, we conclude ... that the plaintiff's evidence concerning the accident was sufficient to support a jury finding that seeping natural gas caused the explosion if the jury chose to believe the evidence.").

9. *Bryan v. Gilpin,* 282 S.W.2d 133, 134–35 (Ky.1955).

10. *Id.*

11. Keeney moved for directed verdict at the close of Osborne's case and again at the close of all evidence, thus, preserving the issue for appeal. *Commonwealth v. Blair,* 592 S.W.2d 132 (Ky.1979).

12. *Fields v. Western Kentucky Gas Co.,* 478 S.W.2d 20, 22 (Ky.1972) (citation and internal quotations omitted).

to the client."[13] In order to show that the "attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful."[14]

▪ The manner in which the plaintiff can establish what should have happened in the underlying action, but for the attorney's conduct, will depend on the nature of the attorney's error.[15] When dealing with a situation such as the instant case where a claim is lost, including, but not limited to, because it is barred by an applicable statute of limitations, a plaintiff must recreate an action that was never tried,[16] The plaintiff must bear the burden the plaintiff would have borne in the original trial. And the lawyer is entitled to any defense

that the defendant would have been able to assert in the original trial. This is what is commonly known in Kentucky law as the suit-within-a-suit approach. While this approach has been repeatedly affirmed, the actual procedure for trying such a case remains elusive. Here, we are presented with the question of how a jury should be instructed in a suit-within-a-suit.

▪ When trying a suit-within-a-suit, especially when the reason for the lost claim is the expiration of the relevant statute of limitations,[17] "all the issues that would have been litigated in the [barred] action are litigated between the plaintiff and the plaintiff's former lawyer."[18] And, in recreating the litigation, the usual instructions that should be given in the underlying case, including any special verdict forms, are those to be used in the malprac-

**13.** *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003).

**14.** *Id. See also Mitchell v. Transamerica Ins. Co.*, 551 S.W.2d 586, 588 (Ky.App.1977) ("[E]very malpractice action does not carry with it a right to monetary judgment. It is the law that a malpractice action against an attorney cannot be established in the absence of a showing that this wrongful conduct has deprived his client of something to which he would otherwise have been entitled.").

**15.** MALLEN & SMITH, 4 LEGAL MALPRACTICE § 37:15 (2012 ed.). *See also Lewandowski v. Continental Cas. Co.*, 88 Wis.2d 271, 276 N.W.2d 284, 289 (1979) ("Regardless of the approach used to resolve the issue of liability and damages in a legal malpractice case[,] the ultimate goal should be to determine what the outcome should have been if the issue had been properly presented in the first instance.... The general rule should be adapted to the facts of the particular case so that it effects a fair balance between the rights and burdens of both the client and the lawyer who negligently conducts litigation on his client's behalf. Situations can be readily conceived where it would be difficult to determine the value of an original action which could not be. tried, but it is the duty of the courts to

fashion a remedy as best they can when the situations are presented.").

**16.** *Id.*

**17.** We do note that a lawyer failing to file a claim before the expiration of the statute of limitations is the predominant circumstance in which the suit-within-a-suit approach is applied. *See, e.g., Nika v. Danz*, 199 Ill. App.3d 296, 145 Ill.Dec. 255, 556 N.E.2d 873 (Ill.App. 4th Dist.1990); *Daugherty v. Runner*, 581 S.W.2d 12 (Ky.App.1978); *Neill v. Hemphill*, 258 Neb. 949, 607 N.W.2d 500 (2000); *Harline v. Barker*, 912 P.2d 433 (Utah 1996); *Bye v. Mack*, 519 N.W.2d 302 (N.D.1994); *Mitchell*, 551 S.W.2d 586. But that is not to say it is the exclusive set of circumstances for which the suit-within-a-suit method is proper. *See, e.g., Marrs*, 95 S.W.3d 856. The determining factor is whether the injury claimed is dependent on the merits of the underlying action. For example, cases involving breach of the duty of loyalty and alleged misappropriation or misallocation of settlement proceeds may not require a suit-within-a-suit. *See* MALLEN & SMITH, 4 LEGAL MALPRACTICE § 37:15 (2012 ed.).

**18.** RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, § 53 cmt. (b).

tice trial.[19] Several states have used this commonsense approach to instructing the jury.[20]

In fact, this is the approach that Kentucky law has adopted. *Daugherty v. Runner* has become a keystone in the practice of legal malpractice actions in the Commonwealth. Palmore and Cetrulo cite *Daugherty* as the source for the recommended legal malpractice jury instruction.[21] While *Daugherty* does provide a clear, concise instruction for a jury to determine whether an attorney has breached the standard of care, it also provides a significant example of how a jury should be instructed in a suit-within-a-suit. *Daugherty* involved the failure of an attorney, while representing a client injured in an automobile accident, to file timely a medical malpractice claim following the death of the client. At trial, the court instructed the jury as follows:

"The Court instructs the Jury:

1. It was the duty of the physicians providing medical care and treatment to Lula [Daugherty] Roach to exercise that degree of care and skill which is expected of reasonably competent practitioners in the same class they belong, acting in the same or similar circumstances.

2. The Jury will answer the following interrogatory:

 Do you believe from the evidence that the physicians providing medical care and treatment to Lula Daugherty Roach at St. Joseph Hospital in Lexington, Kentucky, from February 22, 1972, to March 17, 1972, failed in their duty as described in instruction No. 1, and said failure was the substantial factor in causing the death of Lula Daugherty Roach?

3. If, and only if, you answered 'yes' to instruction No. 2, then you will determine the amount in damages, as you believe from the evidence, the Estate of Lula Daugherty Roach

---

19. MALLEN & SMITH, 4 LEGAL MALPRACTICE § 37:32 (2012 ed.).

20. *See, e.g.,* Alaska: *Power Constructors Inc. v. Taylor & Hintze,* 960 P.2d 20, 30–31 (Alaska 1998) (instructing the jury "to determine what the outcome would have been if [plaintiffs] lawsuit against [lawyer] ... had not been dismissed. Thus, you are hearing this case as if you were the jury in the [underlying] case."); Colorado: *Miller v. Byrne,* 916 P.2d 566, 579–80 (Colo.App.1995) (". . . requires the trial court essentially to treat the jury in the legal malpractice case as it would treat the jury in the underlying [case], *i.e.,* it must also give the instructions that should have been given in the underlying case."); Florida: *Michael Kovach, P.A. v. Pearce,* 427 So.2d 1128 (Fla.App. 5th Dist.1983); Illinois: *Nika,* 145 Ill.Dec. 255, 556 N.E.2d 873, *Orzel v. Szewczyk,* 391 Ill.App.3d 283, 330 Ill.Dec. 381, 908 N.E.2d 569 (Ill.App. 1st Dist.2009); Massachusetts: *Fishman v. Brooks,* 396 Mass. 643, 487 N.E.2d 1377, 1380 (1986) ("Brooks's case was tried on this theory[ ] and[,] thus[,] first involved the question of Fishman's negligence in the settlement of Brooks's claim[;] and, second, if that were established, the question whether, if the claim had not been settled, Brooks would probably have recovered more than he received in the settlement. This is the traditional approach in the trial of such a case. The original or underlying action is presented to the trier of fact as a trial within a trial. If the trier of fact concludes that the attorney was negligent, the consequences of that negligence are determined by the result of the trial within the trial. Thus, in the trial within the trial in this case, the jury had to determine whether the driver negligently caused Brooks's injury and, if so, the damages Brooks suffered and the comparative fault of Brooks and the driver."); Minnesota: *Christy v. Saliterman,* 288 Minn. 144, 179 N.W.2d 288 (1970); Virginia: *Ortiz v. Barrett,* 222 Va. 118, 278 S.E.2d 833, 836–37 (1981); Wisconsin: *Lewandowski,* 276 N.W.2d 284.

21. PALMORE & CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CIVIL § 21.01, p. 21–1 (5th ed.2006).

would have been awarded against the physicians involved....

4. It was the duty of the defendant, E. Michael Runner, Attorney at Law, in undertaking the legal representation of the Estate of Lula Daugherty Roach, to exercise that degree of care and skill expected of a reasonably competent lawyer acting in the same or similar circumstances about which you have heard evidence." [22]

So, in *Daugherty*, it is plain to see that the jury was instructed on the underlying action and then asked to find whether the attorney was negligent or not. We hold that this is the required way of determining causation in a legal malpractice claim involving a suit-within-a-suit.

■ For an attorney to be found liable for legal malpractice, it must be shown that the attorney violated the standard of care *and* that such violation was the proximate cause of injury to the client, *i.e.*, the client would have been successful in the underlying claim but for the negligence of the attorney. The client cannot be found successful on the underlying claim if the jury is not fully instructed on the underlying claim. And it follows then that the attorney cannot be found liable without fully litigating the underlying claim and properly instructing the jury.

In the instant case, the trial court properly instructed the jury on the standard for legal malpractice to be applied to Keeney. But the trial court failed to instruct the jury at all on the underlying case.[23] The instructions skip a logical and necessary step in the process—that is, a finding that Osborne would have been successful on the underlying claim by resolving the question of the liability of Quesenberry. Instead, the jury found Keeney breached the applicable standard of care for malpractice and proceeded to award damages to Osborne from the underlying case without ever proving causation. Providing a jury instruction on the underlying case would have ensured that Keeney's malpractice did, as a matter of fact, cause Osborne's claimed injury.

■ As a result, the trial court's jury instructions in this case are erroneous. They failed to advise the jury adequately of what it had to believe from the evidence in order to return a verdict in favor of Osborne.[24] In upholding the jury instructions, the application of the "bare bones" principle by the Court of Appeals was incorrect and misguided. It is undisputed that "bare bones" instructions are preferred in Kentucky.[25] And we do not depart from that preference today. But "bare bones" does not mean nonexistent or missing. As former Justice William S. Cooper wryly stated, "I have no quarrel with the 'bare bones' approach to instructing juries in Kentucky—so long as the jury is given all of the bones." [26] "Bare bones"

22. "Instructions Given to the Jury," February 26, 1976, at 1–2, *Daugherty*, 581 S.W.2d 12 (No. 183590).

23. The jury was simply instructed that:
"It was the duty of Defendant Steven Keeney, in the underlying legal representation of Plaintiff, Brenda Osborne, to exercise the degree of care and skill expected of a reasonably competent lawyer acting under similar circumstances.
Do you believe from the evidence that Defendant Steven Keeney failed to comply with this duty and that such failure was a substantial factor in causing the loss sustained by Plaintiff, Brenda Osborne?"

24. *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky.2005).

25. *Id.*

26. *Lumpkins ex rel. Lumpkins v. City of Louisville*, 157 S.W.3d 601, 607 (Ky.2005) (Cooper, J. dissenting).

instructions are intended to "pare down unfamiliar and often complicated issues in a manner that jurors, who are often not familiar with legal principles, can understand."[27] But the "bare bones" principle does not, and should not, prevent the law of the case from being presented to the jury.

■ We prefer "bare bones" instructions to make the oft-confusing task of determining liability easier for the layperson to perform. But while simple instructions are preferred, correct and complete instructions are required.[28] Here, the "jury was given less than a whole skeleton."[29] Having determined the instructions to be erroneous, we must now determine whether the error is harmless.

■ Of course, "it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial."[30] We recently affirmed our intention to "return and adhere to the presumption of prejudice inherent in an erroneous instruction."[31] This presumption is rebuttable, but the party asserting the error is harmless bears the burden of affirmatively showing that no prejudice resulted from the error.[32] In order to show no prejudice resulted from the error, it must be proven there was "no reasonable possibility"[33] the erroneous jury instruction affected the verdict. Here, the omission of the instruction as to the underlying negligence action against Quesenberry certainly made it easier to find Keeney liable to Osborne, as one less finding was required. The failure properly to instruct the jury on the underlying case, however, had the effect of allowing the jury to find Keeney liable without the necessary element of causation. We cannot say that the error in this case was harmless. For the reasons stated herein, we must reverse the judgment and remand for further proceedings consistent with this opinion.[34]

■ Our decision to reverse and remand renders the parties' remaining allegations of error moot. But we will address them because they are likely to recur if the case is retried.[35]

27. *Wilkey*, 173 S.W.3d at 229.

28. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552 (Ky.2006) ("Correct instructions are absolutely essential to an accurate jury verdict.").

29. *Lumpkins*, 157 S.W.3d at 607 (Cooper, J. dissenting).

30. *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky.1997).

31. *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky.2008).

32. *McKinney*, 947 S.W.2d at 35.

33. *Emerson v. Commonwealth*, 230 S.W.3d 563, 570 (Ky.2007).

34. The trial court also erred in its instruction on the fraud claim against Keeney. The instruction was incorrect because it did not require a finding that Keeney "either knew [the statements] were not true or acted with reckless disregard for whether they were true or not." PALMORE & CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, *CIVIL* § 31.08, p. 31–8 to 31–9 (5th ed.2006). Instead, the instruction appeared to be one for negligent misrepresentation as the jury only had to find Keeney "should have realized that the statements or conduct were false." *Id.* at § 31.10, p. 31–11. In the event of a retrial, the jury should be properly instructed on the fraud claim.

35. This Court has consistently engaged in this type of review. *See, e.g., Blane v. Commonwealth*, 364 S.W.3d 140, 154 (Ky.2012); *Sanderson v. Commonwealth*, 291 S.W.3d 610, 614 (Ky.2009) (citations omitted); *Bell v. Commonwealth*, 245 S.W.3d 738, 743 (Ky. 2008) ("Because the judgment has been reversed for the foregoing reasons, we will address only those additional assignments of error that are likely to recur upon retrial."); *Terry v. Commonwealth*, 153 S.W.3d 794, 797 (Ky.2005) ("We will also address other issues

## III. REMAINING ISSUES.

### A. A Physical Impact or Touching is No Longer Required to Recover for Claims Involving Emotional Distress.

This Court has long been wed to the principle that "an action will not lie for fright, shock[,] or mental anguish which is unaccompanied by physical contact or inju-ry."[36] This commitment has not endured without criticism. Nearly since its inception into American law in the late 19th century,[37] a large body of scholarly work has disparaged the impact rule.[38] The criticism has not come from scholars alone. Our sister jurisdictions have retreated from the impact rule in droves, leaving Kentucky in a very small minority.[39]

that are likely to recur upon retrial."); *Springer v. Commonwealth*, 998 S.W.2d 439, 445 (Ky.1999) ("Because the other issues raised by the appellants are likely to recur upon retrial, those issues will also be addressed in this opinion.").

**36.** *Deutsch v. Shein*, 597 S.W.2d 141, 145–46 (Ky.1980) (*quoting Morgan v. Hightower's Adm'r*, 291 Ky. 58, 163 S.W.2d 21, 22 (1942)). *See, e.g., Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 928 (Ky.2007); *Hetrick v. Willis*, 439 S.W.2d 942, 943 (Ky.1969).

**37.** The first articulation of the rule is thought to be in *Victorian Railways Commissioner v. Coultas*, 13 App.Cas. (P.C. 1888). The case was overruled some thirteen years later, but that did not stop the rule from becoming widely accepted in the United States. In *Mitchell v. Rochester Ry. Co.*, 151 N.Y. 107, 45 N.E. 354 (1896), New York became the first state to adopt the rule. Massachusetts followed shortly thereafter in *Spade v. Lynn & B.R. Co.*, 168 Mass. 285, 47 N.E. 88 (1897). Kentucky, following the national trend, adopted the impact rule in *Morse v. Chesapeake & O. Ry. Co.*, 117 Ky. 11, 77 S.W. 361 (1903), and refined it through a line of cases beginning with *McGee v. Vanover*, 148 Ky. 737, 147 S.W. 742 (1912); *Kentucky Traction & Terminal Co. v. Bain*, 161 Ky. 44, 170 S.W. 499 (1914); *Smith v. Gowdy*, 196 Ky. 281, 244 S.W. 678 (1922); *Louisville & N.R. Co. v. Roberts*, 207 Ky. 310, 269 S.W. 333 (1925).

**38.** *See, e.g.,* Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 HARV. L.REV. 1033 (1936); Prosser, *Insult and Outrage*, 44 CAL. L.REV. 40 (1956); Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 MICH. L.REV. 874 (1939); Throckmorton, *Damages for Fright*, 34 HARV. L.REV. 260 (1921); Comment, *Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases*, 35 U. CHI. L.REV. 512 (1968); Comment, *Negligently Inflicted Mental Distress: The Case For An Independent Tort*, 59 GEO. L.J. 1237 (1971). Article of particular interest to Kentucky: Robert E. Sanders & Julie L. Duncan, *Bystander's Right to Bring a Cause of Action for Negligent Infliction of Emotional Distress in Kentucky: An Analysis of Major v. General Motors Corp. & Deutsch v. Shein*, 24 N. KY. L.REV 253 (Spring 1997).

**39.** Kentucky is one of only six states that still use the impact rule in some form. Florida has clung to its "hybrid" impact rule, despite "in a limited number of instances either recogniz[ing] an exception to the impact rule or [finding] it to be inapplicable." *Gracey v. Eaker*, 837 So.2d 348, 355–56 (Fla.2002); for a closer look at the exceptions carved out by Florida courts, see Whitney Carson Harper, Case Comment, *Florida Tort Law: Keeping Florida's Impact Rule in Step With Society*, 55 FLA. L.REV. 1093 (2003). Georgia remains committed to the impact rule, although its application has been somewhat erratic. *See Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 533 S.E.2d 82, 84–87 (2000) (acknowledging the history of Georgia's emotional distress law and recognizing that "there have been attempts to find theories of recovery within the confines of the present rule in order to avoid its sometimes harsh results."); for criticism of Georgia's rule, see Christina Hull Eikhoff, Note, *Out With The Old: Georgia Struggles With its Dated Approach to the Tort of Negligent Infliction of Emotional Distress*, 34 GA. L.REV. 349 (1999). Indiana requires a "direct impact by the negligence of another" and "emotional trauma which is serious in nature" in order to maintain an action for emotional distress. *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind.1991). Kansas also maintains there must be a "physical impact": an actual physical injury to the plaintiff in order to recover for emotional distress.

The reasons generally given for Kentucky courts' adoption of the impact rule include: "the damages resulting from the fright are too remote; that fright caused by negligence not being itself a cause of action, none of its consequences can give a cause of action; and that to open the courts to this character of case would tend to promote fraud and the presentation of claims for injuries beyond the capacity of juries properly to assess."[40] Moreover, there has been concern that allowing such claims will result in a flood of new litigation.[41] These concerns, while reasonable, are no longer sufficient to justify adherence to the impact rule.

Unfortunately, the impact rule, while adopted with good intentions, has proven difficult in its application and has been repeatedly stretched and diluted. The supposed beauty of the impact rule is that it draws a bright line for determining when a plaintiff is entitled to recover for emotional injuries.[42] At first blush, this may make sense and seem to counterbalance the feared possibility of subjectivity in finding emotional injury. But, in practice, what constitutes a sufficient impact for purposes of liability is not an easy determination for courts. This determination is further complicated by concerns for justice and a desire to ameliorate the potential harshness of the rule. Illustrative of this difficult balance between "compensating persons who have sustained emotional injuries attributable to the wrongful conduct of others" and "avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of these injuries"[43] are the cases of *Deutsch v. Shein*[44] and *Wilhoite v. Cobb*.[45]

In *Deutsch*, this Court found that "the amount of physical contact or injury that must be shown is minimal."[46] Indeed, a cause of action will be supported if the contact is "slight, trifling, or trivial."[47] The bombardment of Mrs. Deutsch's body with x-rays was found to be sufficient contact to satisfy the impact rule.[48] The facts in *Deutsch* were especially tragic. Mrs. Deutsch, after being subjected to numerous radiological tests and diagnostic x-rays while pregnant, aborted her fetus.

X-rays are simply waves at a much higher frequency with much higher energy than light waves or sound waves, but waves nonetheless. If bombardment with x-rays is sufficient contact, would not bombardment with light waves while witnessing an event be sufficient contact? Would

---

*Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667, 669 (1988). Finally, Nevada requires a physical impact occur before the recovery is allowed for emotional distress negligently inflicted. *Olivero v. Lowe*, 116 Nev. 395, 995 P.2d 1023, 1026–27 (2000); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1387–88 (1998).

**40.** 269 S.W. at 334.

**41.** *Bass v. Nooney Co.*, 646 S.W.2d 765, 769 (Mo.1983).

**42.** *Lee*, 533 S.E.2d at 86 ("However, the benefits of an impact rule are plain in that it provides a brighter line of liability and a clear relationship between the plaintiff's being a victim of the breach of duty and compensability to the plaintiff.").

**43.** *Camper v. Minor*, 915 S.W.2d 437, 441 (Tenn.1996).

**44.** 597 S.W.2d 141.

**45.** 761 S.W.2d 625 (Ky.App.1988).

**46.** *Deutsch*, 597 S.W.2d at 146.

**47.** *Id.* It is worth noting that the impact rule, in its current form, at least arguably promotes fraudulent or trivial claims because of the requirement of a plaintiff to find an impact, however *de minimis*.

**48.** *Id.*

not the hearing of an event be sufficient contact to justify recovery for emotional distress? The answer in this jurisdiction for a very long time has been no.

In *Wilhoite,* like *Deutsch,* the facts were especially tragic. But, unlike in *Deutsch,* the plaintiff was denied the chance for a recovery because of a lack of physical impact. Wilhoite witnessed her infant daughter suffer severe injuries when the truck driven by the defendant left the road and struck her. The infant daughter eventually died as a result of her injuries. The trial court granted summary judgment to the defendant because Wilhoite suffered no physical impact, and the Court of Appeals affirmed. But the Court of Appeals did note that "[i]t might be questioned whether there is any logical difference between the [x]-rays which caused the mother distress in [*Deutsch* ] and the light rays which caused the mother distress in this case." [49]

In the case at hand, the trial court noted in overruling Keeney's motion for directed verdict on the emotional distress claim that if x-rays were enough, then certainly the reverberation of the house and sound waves emitted upon the plane's impact were sufficient to justify recovery. The trial court's observation is not without merit. Looking at Kentucky case law, a logical conclusion would be that sound waves or Shockwaves from an incident could be sufficient contact to allow recovery in claims involving emotional distress. The Court of Appeals disagreed with the trial court's reasoning and reversed Osborne's claim for emotional distress. In

reality, the bright line of impact establishing liability is not so bright.

Additionally, while the rationale underlying the impact rule remains relevant, there are more effective methods of effectuating and protecting that rationale. We have remained steadfast in our commitment to requiring a physical contact because emotional distress "is possibly trivial and simply too speculative and difficult to measure unless [it is] directly linked to and caused by a physical harm." [50] But medical science and treatment have vastly improved since the late 19th century, especially in the field of mental health. In *Congleton,* this Court foreshadowed what may be required to depart from the impact rule, yet remain vigilant of the intangible nature of emotional injury. We noted an injury action involving a first-hand account from the victim or reliable eyewitness testimony and demonstrable evidence, proven through expert testimony, of mental distress manifesting in a medical injury would give rise to a strong challenge to the impact rule.[51] Such a case is before us here.

We act today, as always, mindful of the value of precedent and the doctrine of stare decisis. The doctrine of stare decisis "is the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion." [52] Changing the "ebb and flow of settled law" [53] is not something we take lightly, and we do so only after careful consideration. While stare decisis "permits society to presume that bedrock principles are founded in the

---

49. *Wilhoite,* 761 S.W.2d at 626.

50. *Congleton,* 234 S.W.3d at 929; *Morgan,* 163 S.W.2d at 22 ("The reason being that such damages are too remote and speculative, are easily simulated and difficult to disprove, and there is no standard by which they can be justly measured.").

51. *Congleton,* 234 S.W.3d at 930.

52. *Vasquez v. Hillery,* 474 U.S. 254, 265, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986).

53. *Chestnut v. Commonwealth,* 250 S.W.3d 288, 295 (Ky.2008).

law rather than in the proclivities of individuals,"[54] it does not necessitate that this Court "unquestioningly follow prior decisions" when we are otherwise compelled.[55] This Court is not assigned the duty of maintaining the watch as the law ossifies. Sound jurisprudence suggests that we depart from the impact rule in favor of a standard more at home in our current societal and legal landscape.

▮▮▮▮ Today, believing the justification supporting the existence of the impact rule is no longer valid, we clarify our rule. Our research reveals that at least forty jurisdictions have either rejected the impact rule or abandoned it. An exhaustive review of the law surrounding this issue and the strengths and weaknesses of approaches used in other jurisdictions has persuaded us that these cases should be analyzed under general negligence principles. That is to say that the plaintiff must present evidence of the recognized elements of a common law negligence claim: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury.[56] Furthermore, we recognize that emotional tranquility is rarely attained and that some degree of emotional harm is an unfortunate reality of living in a modern society.[57] In that vein, to ensure claims are genuine, we agree with our sister jurisdiction, Tennessee, that recovery should be provided only for "severe" or "serious" emotional injury.[58] A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case.[59] Distress that does not significantly affect the plaintiffs everyday life or require significant treatment will not suffice.[60] And a plain-

54. *Vasquez,* 474 U.S. at 265, 106 S.Ct. 617.

55. *Chestnut,* 250 S.W.3d at 295.

56. *Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 88–89 (Ky.2003) (citations omitted). ˙

57. *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 46 cmt. 1 & § 47 cmt.j.

58. *Camper,* 915 S.W.2d at 446.

59. *See Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983); RESTATEMENT (SECOND) OF TORTS § 46. We note that individuals are well equipped to deal with the emotional stress generally experienced throughout day-to-day living. However, recovery is only permitted when the harm experienced reaches a level where a reasonable person would no longer be expected to adequately manage it. Many factors may be considered, including, but not limited to, the intensity of the harm, the duration of the harm, and the character or nature of the defendant's conduct. These considerations serve as indicia of the genuineness of the claim. *See also Sacco v. High Country Indep. Press, Inc.,* 271 Mont. 209, 896 P.2d 411, 425 (1995) (noting the general principle that the serious harm threshold "en-

sures that only genuine claims will be compensated.").

60. *See, e.g., Norfolk & W. Ry. Co. v. Ayers,* 538 U.S. 135, 137, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) ("[I]t is incumbent upon . . . plaintiff to prove that his alleged fear is genuine and serious."); *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 708–09 (7th Cir.2009) (holding "mild anxiety that causes [plaintiff] to recheck her work, but that only minimally interferes with her everyday life and for which she has not sought treatment" did not as a matter of Illinois law meet the requisite severity); *Smith v. Amedisys Inc.,* 298 F.3d 434, 450 (5th Cir.2002) (rejecting plaintiff who felt angry, belittled, embarrassed, depressed, disgusted, humiliated, horrified, incompetent, mad, very offended, and repulsed was not sufficient for severe emotional harm); *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789 (D.C.2011); *Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752 (2002); *Johnson v. Ruark Obstetrics & Gynecology Assoc.,* 327 N.C. 283, 395 S.E.2d 85, 97 (1990) ("[M]ere temporary fright, disappointment or regret will not suffice."); *Harris v. Jones,* 281 Md. 560, 380 A.2d 611, 616 (1977) (requiring a plaintiff to show that "he suffered a severely

tiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.[61] This rule accords with the concerns we expressed in *Congleton* and the majority of jurisdictions in the United States. Moreover, this rule continues to address and support the concerns that prompted the adoption of the impact rule in the first place. But now the rule is updated in light of societal advancements in mental health treatment and education, in a manner that assures individuals suffering from legitimate emotional injuries will be able to seek recovery.

Criticism of this rule is to be expected. Most likely, there will be concern over a potential flood of litigation or much lamentation about the deletion of a supposed predictable demarcation of liability. We take this opportunity to dispel the initial volley of criticism by noting that there has been no noticeable flood of litigation in other jurisdictions that have adopted a similar rule.[62] We believe that by applying general negligence principles to these claims, the line for recovery will be even more predictable because attorneys and litigants are intimately familiar with the elements of common law negligence. Moreover, the reasoning underlying the impact rule is unsound.[63] It is at least arguable that the impact rule in its current form promotes fraudulent or trivial claims because the impact required is *de minimis*. Plaintiffs are encouraged to engage in extravagant and creative pleading in order to find a sufficient impact. We no longer tether ourselves to such a rule.

 In adopting a new rule for claims involving emotional distress, we note that generally, there is no good reason for not applying a new rule of tort law retroactively.[64] The area of tort law is not one where stability and predictability are often of utmost concern. We acted in this vein when we adopted comparative negligence in the landmark case of *Hilen v. Hays*.[65] There, we stated that tort law was "unlike contract law" and the appellee had not acted in reliance on the state of the law at the time of the act, thus there was "no legitimate complaint against ... retroactive application."[66] The circumstances of the case before us do not present any reason to depart from this view and, as such, this opinion will be applied retroac-

disabling emotional response to the defendant's conduct"); *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970).

61. *Camper*, 915 S.W.2d at 446 (citations omitted).

62. *See Bass*, 646 S.W.2d at 770 (*citing Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259, 263 (1969); Note, *Negligent Infliction of Mental Distress: Reaction to Dillon v. Legg in California and Other States*, 25 HASTINGS L.J. 1248, 1250 (1974)). *See also Camper*, 915 S.W.2d at 448.

63. The Tennessee Supreme Court provided two main reasons the logic of requiring an impact for a plaintiff to recover is unsound:

First, the fact that a case may be difficult to prove does not in itself justify a prohibition on the cause of action; instead, this difficulty may be addressed in rules concerning the development of the evidence. Second, because imaginary and fraudulent claims may be just as likely in cases in which an actual physical injury occurred, there is no reason to bar this cause of action simply out a fear of such lawsuits; the trial courts, through the rules of evidence and the adversarial system, can guard against these types of cases. *Camper*, 915 S.W.2d at 441.

64. *See Kotsiris v. Ling*, 451 S.W.2d 411 (Ky. 1970); *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984); *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky.1970).

65. 673 S.W.2d 713.

66. *Id.*

tively.[67]

## B. Lost Punitive Damages Are Not Recoverable in A Legal Malpractice Action.

We now turn to the issue of whether a legal malpractice plaintiff may recover punitive damages he would have recovered in the underlying action but for the attorney's professional negligence. This is apparently an issue of first impression in Kentucky[68] and is one that few courts across the nation have considered. Those jurisdictions that have dealt with the issue are split on whether recovery of these lost punitive damages should be allowed with the recent trend appearing to prohibit recovery.[69]

Jurisdictions that have allowed recovery have done so on the basis of compensatory damages because they were lost as a result of the attorney's negligence.[70] Essentially, the punitive damages are converted to compensatory damages awarded as a result of the attorney's negligence. On the other side, recovery of these damages has been prohibited because the purpose of punitive damages would not be advanced.[71] In its opinion, the Court of Appeals observed that the recovery of lost punitive damages would be compensatory because the loss "is a result of the lawyer's negligence." We disagree. Because of our longstanding case law noting the purpose of punitive damages and this jurisdiction's stated requirement of allowing recovery only against the wrongdoer, today we align with those jurisdictions that prohibit recovery of lost punitive damages in legal malpractice actions.

Kentucky has a history of awarding punitive damages to penalize egregious

---

67. "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

68. The issue was dealt with in an unreported federal court opinion out of the Western District of Kentucky. *See McMurtry v. Wiseman,* 2006 WL 2375579 (W.D.Ky. Aug. 16, 2006) (No. 1:04CV–81–R).

69. The line of reasoning prohibiting recovery has been adopted by the highest court in California in *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP,* 30 Cal.4th 1037, 135 Cal.Rptr.2d 46, 69 P.3d 965 (2003), in New York in *Summerville v. Lipsig,* 270 A.D.2d 213, 704 N.Y.S.2d 598 (2000), in Illinois in *Tri–G, Inc. v. Burke, Bosselman & Weaver,* 222 Ill.2d 218, 305 Ill.Dec. 584, 856 N.E.2d 389 (2006), and by the intermediate appellate court in Ohio in *Friedland v. Djukic,* 191 Ohio App.3d 278, 945 N.E.2d 1095 (2010). *See also Paul v. Smith, Gambrell & Russell,* 267 Ga.App. 107, 599 S.E.2d 206 (2004).

Four states and the District of Columbia have allowed recovery, with the District of Columbia in *Jacobsen v. Oliver,* 201 F.Supp.2d 93 (D.C. Cir.2002) (interpreting District of Columbia law), being the most recent. The other jurisdictions following this line of reasoning are Arizona (*Elliott v. Videan,* 164 Ariz. 113, 791 P.2d 639 (1989)); Colorado (*Scognamillo v. Olsen,* 795 P.2d 1357 (Colo.Ct.App.1990)); Kansas (*Hunt v. Dresie,* 241 Kan. 647, 740 P.2d 1046 (1987)); and South Dakota (*Haberer v. Rice,* 511 N.W.2d 279 (S.D.1994)).

70. *See, e.g., Jacobsen,* 201 F.Supp.2d at 101 ("[T]he issue is not the purpose of punitive damages, but the purpose of compensatory damages, which is to give the client what she lost because of the lawyer's negligence.") (citing Monroe H. Freedman, *Caveat Emptor: Conflicts of Interest of ALI Members in Drafting the Restatements,* 26 Hofstra L.Rev. 641, 653 (1998)).

71. *See, e.g., Ferguson,* 135 Cal.Rptr.2d 46, 69 P.3d at 973 ("Thus, by definition punitive damages are not intended to make the plaintiff whole by compensating for a loss suffered. An award of punitive damages, though perhaps justified for societal reasons of deterrence, is a boon for the plaintiff.") (internal citations omitted).

conduct.[72] The purpose of allowing damages of a punitive nature "is to punish and discourage [the defendant] and others from similar conduct in the future."[73] This purpose serves more of a societal interest rather than a private one as it strives to punish the wrongdoer rather than compensate the party harmed. It is important to note that in our judicial system, while punitive and compensatory damages are typically awarded by the same decision-maker at the same time, they serve distinctly different purposes.[74] "The object of compensatory damages is to make the injured party whole to the extent that it is possible to measure his injury in terms of money."[75] Punitive damages have nothing to do with a plaintiff's loss or making the plaintiff whole. Rather, punitive damages "serve a broader function ... aimed at deterrence and retribution."[76]

Allowing Osborne to recover lost punitive damages would not advance the policy underlying punitive damages in any way. In fact, allowing recovery would be antithetical to what punitive damages stand for, untying "the concept of punitive damages from its doctrinal moorings."[77] As a result, punitive damages cannot effectively be transformed into compensatory damages without nullifying the explicit purpose behind the award.

Aside from the failure to conform to the purpose of punitive damages, the plain language of KRS 411.184 prohibits the recovery of lost punitive damages by a legal-malpractice plaintiff. KRS 411.184(2) allows: "[a] plaintiff [to] recover punitive damages only upon proving[ ] ... that the *defendant from whom such damages are sought* acted toward the plaintiff with oppression, fraud[,] or malice."[78] Osborne argues that this Court should read KRS 411.184(2) to allow recovery against Keeney under the facts presented in the instant case. More specifically, Osborne argues that the damages sought are not punitive at all, but are merely compensatory and are appropriately awarded against Keeney.

While the issue of lost punitive damages is novel in the legal malpractice setting, we have dealt with an analogous issue in cases involving deceased tortfeasors. In *Stewart v. Estate of Cooper*,[79] this Court held that a plaintiff may not recover punitive damages from a decedent's estate for the decedent's

---

72. In fact, Kentucky has the "earliest reported American case in which punitive damages were awarded." Michael L. Rustad, *Torts as Public Wrongs*, 38 Pepp. L.Rev. 433, 448 (2011). *See Fleet & Semple v. Hollenkemp*, 52 Ky. (13 B.Mon.) 219 (1852).

73. KRS 411.184(1)(f). *See also Ky. Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373, 375 (Ky. 2000); *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389–90 (Ky.1985); *Hensley v. Paul Miller Ford, Inc.*, 508 S.W.2d 759, 762–63 (Ky.1974); *Bisset v. Goss*, 481 S.W.2d 71 (Ky.1972); *Ashland Dry Goods Co. v. Wages*, 302 Ky. 577, 195 S.W.2d 312, 315 (1946); *Louisville & N.R. Co. v. Jones' Adm'r*, 297 Ky. 528, 180 S.W.2d 555 (1944); *Louisville & N.R. Co. v. Roth*, 130 Ky. 759, 114 S.W. 264 (1908).

74. *See State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (citations omitted).

75. *Schneider*, 15 S.W.3d at 374. *See also Campbell*, 538 U.S. at 416, 123 S.Ct. 1513 ("Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."). Further, by definition, punitive damages are not compensatory damages. *See* KRS 411.184(1)(f).

76. *Campbell*, 538 U.S. at 416, 123 S.Ct. 1513.

77. *Tri–G, Inc.*, 305 Ill.Dec. 584, 856 N.E.2d at 417.

78. KRS 411.184(2) (emphasis added).

79. 102 S.W.3d 913 (Ky.2003).

oppressive, fraudulent, or malicious conduct. The reasoning for this decision was simple. KRS 411.184 is clear on its face, and the estate itself had not acted toward the defendant with the requisite culpability. While factually distinct, a legal malpractice action provides "another situation in which responsibility for punitive damages is sought against a party other than the original wrongdoer."[80] The common thread in these situations is that the stated goal of punitive damages—to deter and punish the wrongdoer—is frustrated when a party other than the wrongdoer is assessed the damages.

Osborne also argues that KRS 411.165, the statute controlling liability of an attorney for professional negligence, allows recovery of lost punitive damages because it says that an attorney found guilty of malpractice "shall be liable to the client for all damages and costs sustained by reason thereof." In crafting her argument, Osborne seizes on the "all damages" language used in the statute to contend that "lost" punitive damages are obviously included and, thus, recoverable. Although we recognize the logic of Osborne's argument, we disagree.

In *Shawnee Telecom Resources, Inc. v. Brown*, we stated the general method in which this Court interprets statutes:

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts.[81]

On their face, KRS 411.184 and 411.165 do not appear to be ambiguous. But in giving the words in the statutes "their commonly understood meaning,"[82] we are faced with two statutes that appear to be in conflict. The "all damages" language of KRS 411.165, given its plain meaning, would allow legal-malpractice plaintiffs to recover all damages without limitation.[83] This would seriously undercut the mandate imposed by KRS 411.184 that recovery of punitive damages be limited to only the defendant who acted toward the plaintiff with oppression, fraud, or malice. In this case, allowing Osborne to recover "all damages" would allow recovery from Keeney those damages that are required by statute to be recovered from the pilot, Quesenberry.

---

**80.** Lonn Weisblum, *A Modest Proposal For Classifying Lost Punitive Damages in a Legal Malpractice Case: Look to the Deceased Tortfeasor for Guidance*, 27 J. Legal Prof. 67, 75 (2002–03). *See also Schneider*, 15 S.W.3d 373 ("[I]t would be antithetical to require the UM carrier to pay a penalty assessed against the wrongdoer[ ] because the burden of payment would fall not upon the wrongdoer, or even the insurer of the wrongdoer, but on the insurer of the innocent party.").

**81.** 354 S.W.3d 542, 551 (Ky.2011).

**82.** *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 229 (Ky.1989).

**83.** *All* is defined as "the whole amount, quantity, or extent of." MERRIAM-WEBSTER DICTIONARY (2012).

"In harmonizing the conflict between two statutes that relate to the same subject, Kentucky follows the rule of statutory construction that the more specific statute controls over the more general statute."[84] Here, KRS 411.184 is the more specific statute. It exclusively deals with the very damages that Osborne wishes to recover. This Court has explicitly stated that KRS 411.184 does not permit recovery against a party other than the wrongdoer, and this case is no different. Lost punitive damages are not recoverable in a legal malpractice action.

Moreover, when interpreting statutes, we do not read them in a vacuum. The "all damages" language used in KRS 411.165 must be read in conjunction with other statutes of similar import and relevance.[85] The statutes at issue are located in the same chapter of KRS, both concern recoverable damages, and, as such, are *in pari materia* ("in the same matter"). Statutes of this nature "should be construed together and, if possible, should be construed so as to harmonize and give effect to provisions of each."[86] In so doing, we hold that "all damages" in KRS 411.165 does not include lost punitive damages because, as stated previously, KRS 411.184 only allows recovery from the individual who acted toward the plaintiff with "oppression, fraud[,] or malice." Allowing Osborne to recover "all damages" under KRS 411.165 would render KRS 411.184 a nullity. "All damages" can be read in harmony with KRS 411.184 as allowing a plaintiff to recover all damages to which the plaintiff is entitled, *i.e.*, those in which the requisite elements for recovery have been satisfied.[87] This does not include lost punitive damages in a legal malpractice action.

Finally, it is a well-known canon of statutory interpretation that the later controls the former when two statutes appear to be in conflict.[88] The statute controlling the awarding of punitive damages, KRS 411.184, was enacted twelve years after KRS 411.165. This principle standing alone would favor KRS 411.184.

84. *Tackett,* 770 S.W.2d at 229 (*citing Withers v. University of Kentucky,* 939 S.W.2d 340 (Ky.1997); *City of Bowling Green v. Board of Education of Bowling Green Independent School District,* 443 S.W.2d 243 (Ky.1969)).

85. *Petitioner F v. Brown,* 306 S.W.3d 80, 85–86 (Ky.2010).

86. *Econ. Optical Co. v. Kentucky Bd. of Optometric Exam's,* 310 S.W.2d 783, 784 (Ky. 1958). *See also Light v. City of Louisville,* 248 S.W.3d 559, 563 (Ky.2008) ("It is incumbent upon courts to resolve the conflict between the two statutes so as to give effect to both.").

87. It is telling that the Court of Appeals applied KRS 411.184 to govern the recovery of Osborne's claim for lost punitive damages. The Court of Appeals stated, "Our decision rests on the statutory language in KRS 411.184(2), which requires that an award of punitive damage must be established by clear and convincing evidence that, here, the defendant [Quesenberry] from whom such damages are sought, acted toward Osborne with conduct allowing for the imposition of punitive damages." It is clear that the court felt "all damages" meant that a plaintiff may recover all damages that have the requisite elements for recovery satisfied.

88. *See, e.g., Williams v. Commonwealth,* 829 S.W.2d 942, 945 (Ky.1992) (citations omitted). *See also Commonwealth v. Hunt,* 619 S.W.2d 733 (Ky.App.1981) ("In enacting laws, the Legislature is presumed to take cognizance of the existing statutes and the condition of the law so that when the statute under consideration is ambiguous, the new enactment is to be construed in connection and in harmony with the existing laws as a part of a general and uniform system of jurisprudence. Apparent conflicts or repugnancies between statutes on the same general subject enacted at different times should be reconciled in the light of the existing statutes and Constitution.") (internal citations omitted).

Today we attempt to clarify an intricate issue in the practice of legal malpractice claims. We hold that lost punitive damages are not recoverable from the attorney against whom a malpractice claim is brought. We do so for two main reasons: first, the argument that punitive damages can be recast as compensatory damages in a legal malpractice claim is flawed and unsupported by our case law; and, second, the deterrence function of punitive damages would be completely written out of the law because the nexus between the attorney accused of malpractice and the actual wrongdoer is far too attenuated.[89] As such, a client's general right to be made whole should yield in light of the nature and purpose of punitive damages.

 Not permitting plaintiffs to recover lost punitive damages means that they may not recover as much as they might have in the underlying action. While this may seem harsh, we recognize that this rule is ameliorated by the fact that a plaintiff may seek punitive damages from the attorney for the attorney's *own* conduct. The Court of Appeals cited *Hendry v. Pelland*, a D.C. Circuit case, for the proposition that it must be shown the attorney acted with "fraud, ill will, recklessness, wantonness, oppressiveness, (or) willful disregard of the (client's) rights."[90] We reject the need for such a standard and hold that a legal-malpractice plaintiff, in the same vein as any other plaintiff, must

show that the attorney was grossly negligent in handling the case and acted with oppression, fraud, or malice. This is consistent with our prior case law awarding punitive damages against attorneys.[91] Accordingly, while Osborne may not seek lost punitive damages in a retrial, she may ask the trial court to instruct the jury on punitive damages for Keeney's conduct in his handling of her claim.[92]

## IV. CONCLUSION.

In legal malpractice actions requiring a suit-within-a-suit, the trial court must instruct the jury on the law of the underlying action in addition to the law involved in the malpractice action. The jury should be instructed as if it were the jury in the underlying case, and success on the underlying claim instruction is necessary to a legal malpractice recovery.

Additionally, because it is likely to occur upon the remand of this case, we hold that the impact rule is no longer the rule of law in Kentucky. A plaintiff claiming emotional distress must satisfy the elements of a general negligence claim, as well as show a severe or serious emotional injury, supported by expert evidence. And a plaintiff in a legal malpractice claim may not recover lost punitive damages. This Court refuses to convert lost punitive damages to compensatory damages for legal malpractice actions. In doing this, we reaffirm the

---

89. *See* Weisblum, 27 J. Legal Prof. at 78.

90. 73 F.3d 397, 400 (D.C.Cir.1996). There is no reported case in Kentucky applying this standard. But the Court of Appeals applied the standard in an unreported decision. *See Payton v. Clay*, 2007 WL 79711, Nos. 2005–CA–000573–MR, 2005–CA–000823–MR (Ky. App. Jan. 12, 2007).

91. *See Bierman*, 967 S.W.2d at 19 (awarding punitive damages for attorney's fraudulent conduct).

92. We also note that the amount of punitive damages sought by Osborne on any subsequent retrial is limited to the amount claimed in any pretrial itemization required under CR 8.01(2). Although the Court of Appeals ruled correctly on this issue on the current state of the record, the issue is rendered moot by our remand.

clearly stated and well-reasoned purpose for punitive damages.

■ We conclude that the new rules espoused today governing claims involving emotional distress and lost punitive damages in legal malpractice actions shall apply to: (1) the present case; (2) all cases tried or retried after the date of filing of this opinion; and (3) all cases pending, including appeals, in which the issue has been preserved.

Reversal is necessary in this case because the trial court erred by failing to instruct the jury on the law of the underlying case involving the negligence of the pilot, Quesenberry. Accordingly, we reverse the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. ABRAMSON, CUNNINGHAM, and NOBLE, JJ., concur. VENTERS, J., concurs, in part, and dissents, in part, by separate opinion in which SCOTT, J., joins. SCHRODER, J., not sitting.

VENTERS, J., Concurring, in part, and Dissenting, in part.

While I concur with the Majority in the elimination of the physical impact rule and in requiring the use of the suit-within-a-suit method for trying legal malpractice claims, I disagree with its decision to the extent that it insulates lawyers from liability for the negligent destruction of a client's claim for punitive damages. The Majority sees conflict between KRS 411.184 and KRS 411.165 where, in this case, none exists. As explained below, KRS 411.184 is plainly not implicated in the issue of whether Osborne may assert a claim for lost punitive damages. And more specifically, KRS 411.165 states a clear legislative policy that negligent lawyers must be held responsible for *all* of the damages sustained by the client. The Majority opinion defeats that policy with the mistaken notion that Osborne seeks to hold Keeney vicariously liable for Quesenberry's gross negligence. Therefore, I respectfully dissent.

The Majority incorrectly holds that, because KRS 411.184(2) prohibits recovery of punitive damages from anyone but "the defendant from whom such damages are sought," Osborne's claim against Keeney for *"lost punitive damages"* is barred. The Majority errs because Osborne does not seek to impose punitive damages upon Keeney for Quesenberry's conduct. That aspect of her complaint is not a claim for punitive damages; it is a claim for compensatory damages. There is a tremendous conceptual difference between the claim Osborne had for "punitive damages" against Quesenberry and her claim against Keeney for "lost punitive damages." The former was truly a claim for punitive damages; the latter is clearly a claim for compensatory damages.

Osborne's claim for punitive damages against Quesenberry was a vested property right that she owned and it had economic value, just as her house had value. Because of Keeney's professional negligence, the value of that claim, like her claim for the damage to her house, was lost; the value of the punitive damage claim was reduced to $0.00. Plainly, under KRS 411.184, Osborne would have no right to recover from anyone for Quesenberry's alleged gross negligence or recklessness. But she does not seek recovery for Quesenberry's conduct—she's already lost that opportunity because of Osborne's negligence. Her present claim is to be compensated for the destruction of her right to assert a punitive damage claim. That is purely a claim for compensatory damages

that does not implicate KRS 411.184. It is simply a part of her lawsuit to recover what she lost financially when Keeney neglected to pursue her cause of action. If successful, Osborne's claim would not punish Keeney for Quesenberry's misconduct. Rather, it would compensate Osborne for the economic harm she sustained due to Keeney's own negligent conduct. And that is exactly what KRS 411.165 says must happen. KRS 411.165(1) mandates that the negligent lawyer "shall be liable to the client for *all* damages and costs sustained by reason [of his professional negligence];" (emphasis added) not just *some* of the damages, *all* of the damages. That includes, by definition, the financial damage Osborne suffered when her punitive damage claim against Quesenberry was, like her house, destroyed. It is what she would have had but for her lawyer's negligence. It is intended to provide recompense for what she lost, not to punish Keeney (or anyone) in Quesenberry's stead.

Perhaps the issue gets confused because of the way we ascertain the extent of her economic loss. The value of the lost claim can be determined a number of ways, and I agree with the Majority that the fairest way is the trial-within-a-trial approach. But in using that approach, we must not lose sight of what is truly on trial. If her suit was successful, Keeney would not be adjudged to be responsible for the negligent destruction of Osborne's house or for the medical expenses, and mental anguish she suffered because of that ordeal. Keeney would be liable for the damages that naturally flowed from his own acts or omissions. Obviously, those damages include the value of her lost claims for the damage to her house and her belongings, her medical expenses, and the value of her lost claim for mental anguish and distress. But they also include the economic loss caused by the destruction of her punitive damage claim, which was separately de-

stroyed by Keeney's negligence just as surely as her house was by Quesenberry's negligence. The trial-with-in-the-trial does not substitute Keeney as the party-defendant in the place of Quesenberry. It is simply the method that we have chosen to determine the value of those losses sustained by Osborne because of Keeney's negligence.

The Majority gives significant weight to the historical underpinnings of punitive damages, that is, to deter and punish the wrongdoer. While that observation, concerning the historical roots of punitive damages, is unassailable, it is not relevant to the issue under review. The issue we consider is *not* punitive damages per se; rather the issue we review is *lost* punitive damages caused by professional negligence.

In summary, KRS 411.184 does not apply because Osborne's claim does not seek to punish Keeney for what Quesenberry did. Her claim is to be compensated for the financial loss she sustained because of Keeney's inaction. KRS 411.165 requires us to hold the lawyer responsible to the client for *all* of the damages the client sustained by reason of his negligence. It makes no exception for damages caused when a lawyer destroys the client's claim for punitive damages. It follows that when an opportunity to recover punitive damages is lost because of professional negligence, the damage cannot properly be categorized as "punitive damages"; rather, the lost damages are transformed into, and correctly categorized as, compensatory damages. Therefore, KRS 411.184(2) is irrelevant to our review of this issue, and accordingly, I dissent.

SCOTT, J., joins.