RENDERED: MAY 30, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0707-MR

KENNETH H. BAKER AND
BAKER LAW OFFICE                                                        APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE JENNIFER WILCOX, JUDGE
                         ACTION NO. 17-CI-002778


ANDRE MULLIGAN; KIRK
LAUGHLIN; AND THE POPPE LAW
FIRM                                                                      APPELLEES

AND


                              NO. 2023-CA-0740-MR

ANDRE MULLIGAN                                                    CROSS-APPELLANT


            CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE JENNIFER WILCOX, JUDGE
                      ACTION NO. 17-CI-002778


KENNETH H. BAKER AND
BAKER LAW OFFICE                                                   CROSS-APPELLEES

OPINION
AFFIRMING IN PART AND REVERSING IN PART
APPEAL NO. 2023-CA-0707-MR
AND AFFIRMING CROSS-APPEAL NO. 2023-CA-0740-MR

** ** ** ** **

BEFORE:  ECKERLE, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Kenneth H. Baker and the Baker Law Office bring Appeal

No. 2023-CA-0707-MR and Andre Mulligan brings Cross-Appeal No. 2023-CA-

0740-MR from a March 21, 2023, Judgment of the Jefferson Circuit Court upon a

jury verdict awarding Mulligan damages of $500,000 in his legal malpractice

action against Baker.  We affirm in part and reverse in part Appeal No. 2023-CA-

0707-MR, and we affirm Cross-Appeal No. 2023-CA-0740-MR.

## INTRODUCTION

This case arises from a legal malpractice action below that occurred as

a result of attorney Baker's failure to timely file a civil rights violation action on

Mulligan's behalf against officers of the Louisville Metro Police Department

(LMPD).  The civil rights action, hereinafter referred to as the underlying action,

was dismissed by the United States District Court for the Western District of

Kentucky as being time-barred by the applicable statute of limitations.  Thus, to

ascertain damages against Baker, the underlying action was recreated in the legal

malpractice action in what is referred to as a "suit-within-a-suit."  *Osborne v.*

-2-

*Keeney*, 399 S.W.3d 1, 10 (Ky. 2012). *See also Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003).

## BACKGROUND

Andre Mulligan was downtown in Louisville, Kentucky, in the early morning hours of September 2, 2012. Mulligan was an adult dancer and was preparing to work in a local establishment on Main Street. Mulligan was outside the establishment when he observed a motor vehicle speeding past him; thereupon, Mulligan yelled and motioned with his hand for the vehicle to slow down. The motor vehicle then backed up on the one-way street, and Louisville Metro Police Officer Timothy O'Daniel emerged from the vehicle.

The events that happened next are disputed. However, Mulligan testified that Officer O'Daniel instructed Mulligan to approach him and then instructed Mulligan to place his hands on the Officer's motor vehicle. Mulligan stated that he complied with all directives of Officer O'Daniel. Nonetheless, Mulligan recounted that Officer O'Daniel proceeded to place a handcuff on one of his hands and told him that he was under arrest for public intoxication. Mulligan testified that he told Officer O'Daniel that he had not committed a crime and had not been drinking; thereupon, Officer O'Daniel thrust Mulligan to the ground penning Mulligan's arm beneath him. Mulligan further testified that Officer O'Daniel placed his knees in his back and neck and beat him with his fists.

-3-

Eventually, Mulligan stated that he was placed into a police vehicle where Officer O'Daniel again beats him for saying that they were punk ass police, and another member of LMPD, Officer Wayne Kapanski,[1] begins twisting Mulligan's neck. Mulligan testified that he eventually played dead, so Officer O'Daniel and Officer Kapanski would stop assaulting him.

By contrast, Officer O'Daniel testified that he was driving in a marked police vehicle on Main Street in downtown Louisville, Kentucky, when Mulligan yelled at him. Officer O'Daniel then stated that he backed up his police vehicle to investigate. Officer O'Daniel could not recall how they started interacting but remembered that Mulligan came to his police vehicle. Officer O'Daniel then testified that Mulligan appeared intoxicated by the way he was walking and that he smelled of alcohol. Officer O'Daniel stated that he believed Mulligan was under the influence of alcohol and told Mulligan he was being arrested for public intoxication. Officer O'Daniel testified that when he attempted to hand cuff Mulligan, Mulligan squared up or reared back, and he was only able to place one hand cuff on Mulligan. At that point, Officer O'Daniel stated that he believed Mulligan was actively resisting arrest. Eventually, Officer O'Daniel testified that he and Mulligan ended upon the ground with Officer O'Daniel attempting to gain

---

[1] Officer Wayne Kapanski's last name is sometimes spelled Kopanski. Throughout this Opinion, we shall spell his last name as Kapanski as the circuit court did in its jury instructions and judgment.

control over Mulligan. According to Officer O'Daniel, he called for backup; Mulligan was successfully restrained, and Mulligan was placed in the backseat of a police vehicle. Officer O'Daniel charged Mulligan with public intoxication, disorderly conduct, resisting arrest, menacing, and assault.

Mulligan engaged Baker to represent him in the criminal action, and the circuit court eventually dismissed all criminal charges against Mulligan without a probable cause stipulation. Mulligan then engaged Baker to represent him in a civil action seeking damages from the officers and/or Louisville-Jefferson County Metro Government.

On April 24, 2014, Mulligan filed a complaint in the Jefferson Circuit Court against Officer O'Daniel and Louisville-Jefferson County Metro Government for unlawful search and seizure, false arrest, use of excessive force, malicious prosecution, and for violations of 42 United States Code (U.S.C.) §§ 1983, 1985, & 1986 (*Mulligan v. O'Daniel*, Action No. 14-CI-002286). The action was removed to the United States District Court, Western District of Kentucky, Louisville Division (*Mulligan v. O'Daniel*, Civil Action No. 3:14-CV-00393-JHM).[2] By summary judgment entered October 27, 2015, the U.S. District

---

[2] For clarity in this Opinion, the civil action filed by Kenneth H. Baker on behalf of Andre Mulligan for claims arising from actions of police officers of the Louisville Metro Police Department (LMPD), will be referred to throughout as the "underlying action." The action filed against Baker by Mulligan will be referred to as the "malpractice" action.

Court dismissed all claims based upon expiration of the one-year statute of limitations, except the malicious prosecution claim. The U.S. District Court concluded that the dismissed claims were not timely filed as the complaint was filed (April 24, 2014) more than one year from Mulligan's arrest (September 2, 2012).[3]

Baker subsequently informed Mulligan that he may have committed malpractice by failing to timely file the underlying action. Thereafter, Mulligan engaged attorney Kirk Laughlin from the Poppe Law Firm to represent him in a potential malpractice action against Baker. By letter dated June 28, 2016, Laughlin informed Baker that Mulligan had retained Laughlin in relation to a possible malpractice claim and requested a copy of Mulligan's file. Baker then sent an email to Mulligan and informed him that Baker could not continue to represent him in the U.S. District Court. The court permitted Baker to withdraw from representing Mulligan in the action and gave Mulligan time to secure new legal counsel. Nonetheless, Mulligan failed to secure legal counsel to represent him, and the U.S. District Court dismissed the malicious prosecution claim for failure to prosecute on November 17, 2016.

---

[3] The U.S. District Court concluded that § 1983 actions in Kentucky were limited by the one-year statute of limitations found in Kentucky Revised Statutes (KRS) 413.140(1)(a) and that Mulligan's state law claims were also barred by KRS 413.140(1)(a) and (1)(d).

Mulligan then filed the instant legal malpractice action against Baker in June of 2017. Baker timely answered the complaint. Baker later filed a third-party complaint against Laughlin and the Poppe Law Firm. In the third-party complaint, Baker alleged:

> 3. That, on or before June 24, 2016, the Plaintiff, Andre Mulligan, hired the Defendant, Kirk A. Laughlin and the Poppe Law Firm, to represent him for alleged legal malpractice related to the underlying claim *Mulligan v. O'Daniel*, in the U.S. District Court for the Western District of Kentucky, Case No. 3:14-cv-00393.
>
> 4. That the Plaintiff, Andre Mulligan, had contracted with Defendant Baker to represent him in the underlying claim, and in so contracting had agreed to cooperate with Baker in regards to the underlying claim.
>
> . . . .
>
> 7. That Defendant Baker had secured a settlement offer in the underlying matter and that, upon the advice and intentional interference of the Third Party Defendants, the Plaintiff refused any cooperation with Defendant Baker to facilitate the settlement of the underlying matter.
>
> 8. That the Plaintiff refused any cooperation or communication with Defendant Baker, forcing Baker to withdraw from the underlying matter and breaching the contract between Baker and the Plaintiff.
>
> 9. That the U.S. District Court advised Plaintiff and Third Party Defendants of Defendant Baker's request to withdraw from the underlying claim on or about July 13, 2016, and subsequent thereto, and as to the necessity for a subsequent attorney to enter an appearance in the matter.

10. That, despite the Court's notice to the Third Party Defendants, Laughlin and the Poppe Law Firm, failed to represent Plaintiff in the underlying matter, failed to advise Plaintiff of the need for him to secure an attorney, and failed to advise him of the necessity to mitigate any damages related to any alleged malpractice.

11. That, as a result of the negligence of the Third Party Defendants, Laughlin and the Poppe Law Firm, the Plaintiff's claim for malicious prosecution in Case No. 3:14-cv-00393 was dismissed on November 17, 2016.

12. That, as a result of the contractual interference of the Third Party Defendants, Baker suffered damages, including the loss of attorney fees in settling or litigating the underlying action.

13. The Third Party Defendants failed to exercise that degree of care and skill expected of reasonably competent attorneys while representing Plaintiff, resulting in significant financial loss and dismissal of Plaintiff's claim of malicious prosecution against Officer O'Daniel. Such failure was negligent and/or grossly negligent.

Third-Party Complaint at 2-3.

A jury trial ensued on March 13, 2023, in Jefferson Circuit Court that lasted for five days. The trial court directed a verdict in favor of Laughlin and Poppe Law Firm upon Baker's third-party claims, but Mulligan's claims as asserted in the complaint were presented to the jury. The jury returned a verdict in favor of Mulligan and found that Baker had committed malpractice. The jury awarded Mulligan damages of $250,000 for pain and suffering caused by Officer

-8-

O'Daniel's and Officer Kapanski's conduct in the underlying action and also awarded additional damages of $250,000 in pain and suffering caused by Baker's malpractice. As a result, the trial court rendered a Judgment on March 21, 2023, against Baker for a total of $500,000.

Baker filed Appeal No. 2023-CA-0707-MR and Mulligan filed Cross-Appeal No. 2023-CA-0740-MR. We shall initially address the arguments raised in Appeal No. 2023-CA-0707-MR and then Cross-Appeal No. 2023-CA-0740-MR.

## APPEAL NO. 2023-CA-0707-MR

To begin, Baker raises numerous issues on appeal. For purposes of facilitating our review, we have categorically grouped the issues by subject matter to provide a cogent and orderly analysis which follows.

## I. EVIDENTIARY RULINGS

As an appellate court, we review the trial court's evidentiary rulings for an abuse of discretion. *Ky. Guardianship Adm'rs, LLC v. Baptist Healthcare Sys., Inc.*, 635 S.W.3d 14, 20 (Ky. 2021). If the trial court abused its discretion as to an evidentiary ruling and the error is preserved, we must determine whether the error affected the substantial rights of a party – whether the outcome of the proceeding would have been different.[4] Kentucky Rules of Evidence (KRE) 103;

---

[4] During the course of the five-day trial, both parties made numerous objections to the introduction of evidence and for other legal reasons. Unfortunately, when the parties reached the bench, the trial judge turned off the recording and the actual arguments made by either party for

-9-

Kentucky Rules of Civil Procedure (CR) 61.01; *Crane v. Commonwealth*, 726 S.W.2d 302, 307 (Ky. 1987); *Hawkins v. Rosenbloom*, 17 S.W.3d 116, 121 (Ky. App. 1999). Our review of this issue proceeds accordingly.

## A. Nose Fracture

Baker contends the trial court committed reversible error by permitting Mulligan to testify that he suffered a broken nose from being hit in the face by Officer O'Daniel. Baker points out that during trial, Mulligan testified that his nose had been broken in a motor vehicle accident several months before his arrest, had healed, and was broken again by Officer O'Daniel on the night of his arrest. Baker believes that only a medical expert could testify concerning Mulligan's nose fracture. Baker also asserts that Mulligan was improperly permitted to refer to emergency room records during his direct examination. In fact, Baker alleges that Mulligan improperly read from the emergency room record during his testimony.

During direct examination, Mulligan was asked to identify a photo of him taken at the jail. Counsel then inquired what was different about this photo of him. Mulligan responded that his nose was visibly slanted and that his nose was broken. Mulligan pointed out that he knew his nose was broken by how slanted his

---

their objections were not preserved. Neither party raised this issue before the trial court nor this Court. Accordingly, we have relied on the parties' arguments as set out in their briefs in our review of these issues.

nose was to one side. Mulligan also acknowledged that his nose was previously broken in a car accident but that his nose was straight then. Mulligan also described other injuries that were visible on the photo. Mulligan further testified that upon being released from jail the next day, he went to the emergency room at Saint Mary's Hospital. During his direct examination, Mulligan referred to records from the emergency room. He testified that he saw an emergency room doctor and had multiple radiology tests. Reading from the emergency room records, Mulligan indicated that he was diagnosed with a left nasal bone fracture, among other injuries. Mulligan stated that his nose was broken due to Officer O'Daniel repeatedly striking Mulligan's face.

In the Kentucky Rules of Evidence, two separate sections control the admission of lay opinion evidence and expert opinion evidence. KRE 701 deals with lay opinion evidence, and it provides:

> If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited
> to those opinions or inferences which are:
>
> (a) Rationally based on the perception of the witness;
>
> (b) Helpful to a clear understanding of the witness'
> testimony or the determination of a fact in issue; and
>
> (c) Not based on scientific, technical, or other specialized
> knowledge within the scope of Rule 702.

And KRE 702 deals with expert opinion evidence, and it provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the proponent demonstrates to the court that it is more likely than not that:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness' opinion reflects a reliable application of the principles and methods to the facts of the case.

As an addendum to KRE 701, the notes of the Evidence Rules Review

Commission explain:

The amendments to Rules 701 and 702 must be read together. The introduction and reliability of the evidence is determined not by asking whether the *witness* is lay or expert, but, instead, by asking whether the *testimony* to be offered is lay or "scientific, technical, or other specialized knowledge." If it is of the former, then Rule 701 is applicable. If it is of the latter, then Rule 702 must be used.

Under KRE 701, a lay person is permitted to testify as to an apparent physical or bodily condition that is based upon his own first-hand perceptions and not based upon medical expertise. KRE 701; *Equitable Life Assurance Society of United States v. Fannin*, 53 S.W.2d 703, 706 (Ky. 1932); *see also* R. Lawson, *The Kentucky Evidence Law Handbook*, § 6.05[2] (2019 Edition).

In this case, Mulligan testified that his nose was swollen and slanted to one side, and based upon these observations, he believed his nose was broken. Additionally, Mulligan read from emergency room records, wherein a diagnosis listed was fracture to his nasal bone. The emergency room records from Saint Mary's Hospital were self-authenticating, and the records' contents qualify under an exception to the hearsay rule. Kentucky Revised Statutes (KRS) 422.300(2); KRE 803(6). So, Mulligan testified as to his lay opinion that he suffered from a broken nose based upon his first-hand observations of his nose per KRE 701. Even if such lay opinion evidence were improper, Mulligan also read from the emergency room records entered into the record, wherein, he was diagnosed as suffering a broken nose. As a result, we are unable to conclude that reversible error occurred.

## B. Workers' Compensation Opinion

Baker contends that the trial court committed reversible error by excluding evidence that Mulligan had allegedly committed perjury during a workers' compensation proceeding.[5] Baker states that Mulligan filed a workers' compensation action approximately five years before his arrest. Baker asserts that in the opinion, the administrative law judge opined that Mulligan had committed

---

[5] Baker entered the opinion into the record by offering it as an avowal exhibit. Kentucky Rules of Evidence 103(a)(2).

perjury in the proceedings. Baker argues that this evidence of perjury was relevant for impeachment purposes. Baker also believes that Mulligan opened the door to such impeachment when he testified that, "I'm never going to lie. I'm not lying. I'll go to jail before I lie." Baker's Brief at 12. Baker argues that the opinion in the workers' compensation case should have been admitted, and the trial court committed reversible error by failing to do so.

KRE 611(b) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." KRE 608 deals particularly with the evidence admissible to support a witness's credibility or to impugn same. KRE 608 provides:

> (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another

witness as to which character the witness being cross-examined has testified. No specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

At the discretion of the trial court, KRE 608(b) permits the cross-examination of a witness concerning specific instances of past conduct that bear upon the truthfulness/untruthfulness of such witness; however, these specific instances of conduct, other than criminal convictions, may not be proven by extrinsic evidence. *See* R. Lawson, *The Kentucky Evidence Law Handbook*, § 4.25[4] (2019 Edition). Thus, counsel may ask a witness about such specific instances of conduct but then "is stuck with whatever answer is given." *Allen v. Commonwealth*, 395 S.W.3d 451, 462 (Ky. 2013). And it must be emphasized that the decision to admit or exclude such an instance of past conduct is within the discretion of the trial court. KRE 608.

In this case, KRE 608 would allow the trial court, at its discretion, to permit Baker to cross-examine Mulligan about his alleged perjury in the workers' compensation action. However, Baker would not have been permitted to introduce the opinion into evidence. In this instance, the trial court exercised its discretion

-15-

and declined to permit the cross-examination or introduction of the opinion into evidence. Baker has failed to demonstrate that the trial court abused its discretion by so doing.

The Kentucky Supreme Court has recognized that "when one party introduces improper evidence, such 'opens the door' for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence." *Metcalf v. Commonwealth*, 158 S.W.3d 740, 746 (Ky. 2005). While Mulligan did testify as to his truthfulness, the trial court believed that introduction of the alleged perjury in the workers' compensation proceeding would lead to undue prejudice. Under KRE 403, the trial court may exclude evidence if its probative value is outweighed by undue prejudice. Here, the trial court particularly determined that the prejudicial effect of the alleged perjury in the workers' compensation action outweighed its probative value, and we conclude that the trial court did not abuse its discretion by so ruling.

## C. Underlying Damage Claims

Baker contends that the trial court committed reversible error by excluding evidence related to Mulligan's claim of damages against the police officers for unlawful search and seizure, false arrest, use of excessive force, malicious prosecution, and for violations of 42 U.S.C. §§ 1983, 1985, and 1986. In particular, Baker alleges that the trial court erroneously excluded evidence of

"Mulligan's past, present, or future income or financial status." Baker's Brief at 13. Baker points out that Mulligan testified that he suffered loss of reputation and loss of income due to his alleged false arrest. During discovery in the underlying action, Baker alleges that Mulligan's tax documents demonstrate that he was being untruthful concerning his financial losses, and such untruthfulness led to a breakdown of the attorney-client relationship. Moreover, Baker believes that the tax documents were admissible under KRE 608(b).

As set forth above, KRE 608 permits the cross-examination of a witness concerning specific instances of past conduct that bear upon the truthfulness/untruthfulness of such witness; however, these specific instances of conduct, other than criminal convictions, may not be proven by extrinsic evidence. And the decision to admit or exclude such a specific instance of past conduct lies within the discretion of the trial court.

In this case, the trial court exercised its discretion under KRE 608 and excluded such evidence of Mulligan's finances. Additionally, it must be remembered that Mulligan did not seek to recover any damages for lost income or loss of reputation in the community. Rather, Mulligan only sought damages for pain and suffering caused by the officers' actions and for pain and suffering caused by Baker as a result of his malpractice. Therefore, Mulligan's financial losses or

gains were simply irrelevant to any damage claim. Upon the whole, we do not believe that the trial court abused its discretion by excluding this evidence.

**D. Evidence of Prior Assault of Mulligan by LMPD**

Baker also contends that the trial court erred by excluding evidence of a prior assault allegedly carried out by off-duty LMPD officers upon Mulligan in August of 2012, during an incident that occurred at Fourth Street Live in Louisville, Kentucky.[6] Baker asserts that Mulligan had alleged that one off-duty LMPD officer put a gun to his head and told him to leave the venue. Thereafter, Baker points out that Mulligan filed a civil action, which was ultimately settled. Baker believes that evidence of this incident was relevant to Mulligan's state of mind at the time of his arrest by Officer O'Daniel some two weeks later and upon Mulligan's damage claims.

In August of 2012, Mulligan was at Fourth Street Live when an incident occurred between him and one or more off-duty LMPD officers working as security. The August of 2012 incident did not involve physical injuries and did not result in Mulligan's arrest. Even if relevant, the probative value of the incident is weak at best; however, this slight probative value is substantially outweighed by its prejudicial effect on the jury. KRE 403. For this reason, we must conclude that

---

[6] The off-duty police officers were employed by a private company providing security for Fourth Street Live businesses.

-18-

the trial court did not abuse its discretion by excluding evidence of the August of 2012 incident.

## II. MISTRIAL

Baker also asserts that the trial court erred by denying his motion for a mistrial. Baker argues that he was entitled to a mistrial due to "ambush testimony by Mulligan regarding an undisclosed surgery" to repair his alleged broken nose. Baker's Brief at 11. More specifically, Baker contends that Mulligan improperly testified that he had surgery to repair his broken nose because the bones were crushed, and the surgery was necessary to save his life. However, Baker points out that he was never informed about the nose surgery and argues the introduction of such evidence constitutes trial by ambush.

As to a mistrial, the Kentucky Supreme Court has held:

> It is universally agreed that a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings which will result in a manifest injustice. The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way.

*Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996).

In this case, we do not believe that Mulligan's testimony concerning a surgery on his nose to repair a fracture was sufficiently egregious to justify a mistrial. Baker was cross-examining Mulligan when Mulligan stated he had

-19-

undergone nose surgery, and Baker then continued to question Mulligan about the nose surgery. At that time, Baker made no objection to Mulligan's testimony concerning the nose surgery. In fact, Baker only objected to Mulligan's testimony the day after it occurred and at that time requested the mistrial. To be entitled to a mistrial, there must occur during trial a "fundamental defect," and it "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Id.* Baker has failed to demonstrate that such fundamental defect occurred. Consequently, we conclude that the trial court properly denied Mulligan's motion for mistrial.

### III. JURY INSTRUCTIONS

Baker next argues that the trial court erroneously instructed the jury. He has made sundry arguments attacking the substance of the jury instructions, and we will address each argument.

To begin, jury instructions must be based upon the evidence introduced at trial, correctly state the law, and be intelligible to the jury. *Mendez v. Univ. of Ky. Bd. of Trustees*, 357 S.W.3d 534, 538-39 (Ky. App. 2011). Kentucky follows the bare bones approach to jury instructions. Under the bare bones approach, the "jury instructions should refrain from elaborating on an abundance of detail, but still strike the proper balance in providing enough information to a

jury to make it fully aware of the respective legal duties of the parties." *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005).

Additionally, CR 51(3) sets forth the requirements for preserving objections to jury instructions:

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

Therefore, a party must set forth the grounds of his objection or offer a proposed jury instruction that fairly and adequately presents the party's position before the trial court instructs the jury in order to preserve the error for appellate review. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709 (Ky. 2020). Moreover, proposed jury instructions will not fairly and adequately present the party's position and will not properly preserve an objection as to the substance of a jury instruction when:

> (1) the omitted language or instruction was not contained in the instruction tendered to the trial court; i.e., when the allegation of error was not presented to the trial court *at all*; (2) the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error; or (3) the tendered instruction itself was otherwise erroneous or incomplete.

*Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 163-64 (Ky. 2004). A properly preserved objection to the substance of a jury instruction presents an issue of law, and our review is *de novo*. *Disselkamp*, 600 S.W.3d at 709.

**A. Instruction No. 1 – Causation**

In Instruction No. 1, Baker points out that the jury was initially instructed to find whether he committed legal malpractice, and then in Instruction No. 2, the jury was instructed upon the underlying claims of unlawful search and seizure, false arrest, use of excessive force, and malicious prosecution in relation to Officer O'Daniel and/or Officer Kapanski. Baker maintains that the order of the jury instructions was incorrect as the jury must initially be instructed on the underlying claims, and if those claims are successful, the jury then proceeds to the legal malpractice instruction. By reversing the order of the jury instructions, Baker believes that the jury findings as to causation were fatally flawed.

Baker filed proposed jury instructions wherein the jury was initially instructed upon the underlying claims and thereafter instructed upon the legal malpractice. Thus, this issue was preserved for appellate review.

In a legal malpractice action, it is well-established that:

[A] plaintiff . . . has the burden of proving: "[(]1) that there was an employment relationship with the defendant/attorney; [(]2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar

-22-

circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client."

*Osborne v. Keeney*, 399 S.W.3d 1, 9-10 (Ky. 2012) (quoting *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003)). Where an attorney's alleged negligence results in an action being barred by the statute of limitations, "a plaintiff must recreate an action that was never tried [and] must bear the burden the plaintiff would have borne in the original trial." *Id.* at 10 (footnote omitted). At the same time, the attorney may advance any defense that would be available to a defendant in the original trial. *Id.* This is commonly referred to as "the suit-within-a-suit approach." *Id.* at 10. When instructing the jury under the suit-within-a-suit approach, the jury should initially be "instructed on the underlying action and then asked to find whether the attorney was negligent or not." *Id.* at 12.

In this case, Instruction No. 1 asked the jury whether Baker was negligent in his representation of Mulligan, and if the jury found Baker negligent, Instruction No. 2 then asks the jury to determine whether Mulligan would have succeeded upon his claims of unlawful search and seizure, false arrest, use of excessive force, and malicious prosecution against Officer O'Daniel and/or Officer Kapanski. In so instructing the jury, the trial court plainly instructed the jury initially upon the malpractice claim and thereafter, the underlying action.

Our case law holds in this type of case that the jury should ideally be instructed on the underlying action and then on the malpractice action. *Osborne*,

399 S.W.3d at 9-12. However, the instructions must be viewed as a whole. *Carmical v. Bullock*, 251 S.W.3d 324, 328 (Ky. App. 2007). Here, the trial court properly instructed the jury upon the substantive law as to malpractice and upon the substantive law as to the original claims in the underlying action for unlawful search and seizure, false arrest, use of excessive force, malicious prosecution, and for violations of 42 U.S.C. §§ 1983, 1985, and 1986 against Officer O'Daniel and/or Officer Kapanski. Considering the jury instructions as a whole, we cannot conclude that the mere sequence of the jury instructions in this case resulted in prejudicial error. *Disselkamp*, 600 S.W.3d at 724.

## B. Instruction No. 1 – Duty of Mulligan

Baker also contends that jury Instruction No. 1 failed to set forth Mulligan's duties to peacefully submit to arrest, to exercise ordinary care for his own safety, and to obey law enforcement orders. Baker tendered jury instructions that included these duties; thus, this issue is preserved for our review. Baker further alleges that such duties should have been included in the jury instructions for false arrest and excessive force. We disagree.

As concerns excessive force, the jury was instructed in Instruction No. 2, to find whether Officer O'Daniel and/or Officer Kapanski used unreasonable force against Mulligan, and unreasonable force was defined as that force which is unreasonable under the circumstances. In determining whether unreasonable force

was used, the jury was instructed to consider whether Mulligan was actively resisting arrest or attempting to flee arrest. So, the jury was instructed to consider Mulligan's conduct within the context of resisting arrest or attempting to flee. The jury instructions upon excessive force fairly and accurately stated the law and complied with the bare bones approach for jury instructions in Kentucky. *See Mendez*, 357 S.W.3d at 538; *Olfice, Inc.*, 173 S.W.3d at 229.

As to the jury instruction upon false arrest, also set forth in Instruction No. 2, the jury was instructed that Mulligan must prove that Officer O'Daniel arrested Mulligan, Officer O'Daniel did not have probable cause to arrest Mulligan, and Officer O'Daniel acted under color of law in arresting Mulligan. The jury was also instructed that probable cause existed "if, at the moment the arrest was made, a reasonable person in **Officer O'Daniel's** position would have believed that **Mr. Mulligan** had committed or was committing a crime." This instruction correctly stated the law upon false arrest and was again consistent with the bare bones approach to jury instructions. *See Mendez*, 357 S.W.3d at 538-39; *Olfice, Inc.*, 173 S.W.3d at 229. Therefore, we conclude that the jury was properly instructed upon false arrest and excessive force.

**C. Instruction No. 2 – Unlawful Search and Seizure, False Arrest, Use of Excessive Force, and Malicious Prosecution**

In Instruction No. 2, Baker maintains that the trial court erred by combining the claims of unlawful search and seizure, false arrest, use of excessive

force, and malicious prosecution into one jury instruction (Instruction No. 2).

Baker alleges that Instruction No. 2 was ambiguous and confusing. Baker

complains that Instruction No. 2 contained broad concepts and was modeled after

federal jury instructions.

Baker states that he preserved this error by submitting proposed jury

instructions that separated each claim, and we agree.

While the trial court did combine the underlying claims (unlawful

search and seizure, false arrest, use of excessive force, and malicious prosecution)

into Instruction No. 2, the instruction clearly separated each claim and set forth the

relevant law applicable to such claim. The combining of the underlying claims of

unlawful search and seizure, false arrest, use of excessive force, and malicious

prosecution into one jury instruction is not *per se* erroneous. Rather, the jury

instruction must correctly state the law and do so in an intelligible manner. *See*

*Mendez*, 357 S.W.3d at 538-39. Instruction No. 2 was plainly written, and the jury

was clearly instructed upon the law. Moreover, while Baker alleges the trial court

erred by allegedly adopting federal jury instructions, Baker fails to specify how the

adopted "federal" instructions were particularly erroneous.

## D. Instruction No. 2 – *Terry* Stop

Baker argues that the trial court misstated the law in Instruction No. 2

by requiring Officer O'Daniel to possess probable cause to arrest Mulligan.

According to Baker, Officer O'Daniel could have stopped Mulligan under *Terry v. Ohio*, 392 U.S. 1 (1968) and needed only possess a reasonable suspicion of criminal activity to do so. Additionally, Baker argues that Instruction No. 2 erroneously set forth the law as to Officer O'Daniel's search of Mulligan and again argues that the search was justified under *Terry*, 392 U.S. 1. Mulligan claims that this issue is preserved by his proposed jury instructions.

However, a review of Baker's proposed jury instructions reveal that Baker failed to offer an instruction consistent with *Terry*, 392 U.S. 1. In Baker's proposed jury instructions, there is no instruction that Officer O'Daniel was permitted to stop and pat down Mulligan if he possessed a reasonable suspicion of criminal activity. Baker stated that this objection was preserved by the filing of his proposed jury instructions. From a review of the proposed jury instructions, it is clear that the instructions do not fairly and adequately present Baker's objection so as to preserve same for appellate review. Thus, this allegation of error is not preserved for our review.

## E. Instruction No. 2 – Officer O'Daniel and Officer Kapanski

Baker also assigns error in Instruction No. 2 as Officer O'Daniel and Officer Kapanski were both included in some of the claims, and as a result, Baker contends that it is impossible to discern the jury's findings as to each officer:

> It cannot be deciphered from the trial court's
> Instruction whether the jury believed Mulligan met his

-27-

burden for liability against one or both of the officers. As a result, the verdict does not support the burden of proof being met against *either* officer. Here again, a patchwork of findings on the part of the jury, none of which 9 jurors agree upon, is easily possible. If Mulligan convinced four jurors that Officer O'Daniel only was liable, four others that Officer Kapanski was liable, and the four remaining that both were liable, he should not be entitled to a verdict. . . .

Baker's Brief at 23.

Instruction No. 2 was not erroneous for including both Officer Kapanski and Officer O'Daniel. In Instruction No. 2, the jury unanimously agreed that Mulligan "could have succeeded on at least one of his underlying civil rights claims against **Officer O'Daniel** (false arrest, unlawful search, unlawful seizure, or malicious prosecution) or **Mr. Mulligan** could have succeeded on his excessive force claim against **Officer O'Daniel** and/or **Officer Kapanski**." As to the agreement of jurors in a civil action, KRS 29A.280(3) provides, in relevant part, "[t]he agreement of at least three-fourths (3/4) of the jurors is required for a verdict in all civil trials by jury in Circuit Court." Instruction No. 2 did not violate this statutory requirement that nine jurors must agree for a verdict in a civil action. The jury unanimously agreed upon Instruction No. 2, which included both Officer O'Daniel and Officer Kapanski. We, thus, reject Baker's argument on this issue.

-28-

**F. Instruction No. 4 – Damages**

In Instruction No. 4, Baker contends that the trial court erred by instructing the jury it could award damages for mental pain and suffering caused by his legal malpractice. Baker argues that damages for such emotional pain and suffering are outside the scope of permissible damages in a legal negligence claim. Baker maintains that damages in a legal malpractice claim are limited to those damages that could have been recovered in the underlying action. Additionally, Baker asserts that damages for emotional pain and suffering is limited to severe or serious emotional injuries that must be proven by expert testimony. *Osborne*, 399 S.W.3d at 17-18.

KRS 411.165(1) provides that "[i]f any attorney employed to attend to professional business neglects to attend to the business, after being paid anything for his services, or attends to the business negligently, he shall be liable to the client for all damages and costs sustained by reason thereof."[7] As noted, the Supreme Court has recognized that Kentucky follows the suit-within-a-suit approach as to legal malpractice. *Osborne*, 399 S.W.3d at 11. Under this approach, "it must be shown that the attorney violated the standard of care *and* that

_____

[7] The Supreme Court of Kentucky has held that a claimant may recover punitive damages for the attorney's own conduct if that conduct amounts to "fraud, ill will, recklessness, wantonness, oppressiveness, (or) willful disregard of the (client's) rights." *Osborne v. Keeney*, 399 S.W.3d 1, 23 (Ky. 2012) (quoting *Hendry v. Pelland*, 73 F.3d 397, 400 (D.C. Cir. 1996)).

-29-

such violation was the proximate cause of injury to the client, *i.e.*, the client would have been successful in the underlying claim but for the negligence of the attorney." *Id.* at 12. On its face, the statute looks to the recovery of those damages that could have been recovered in the underlying claim absent the attorney's negligence.

In this case, the jury was instructed upon pain and suffering damages that would have been recoverable in the underlying action as well as pain and suffering damages from Baker's negligent conduct in the malpractice action. While the Supreme Court in *Osborne*, 399 S.W.3d at 17-18, appears to allow pain and suffering claims against a negligent attorney in malpractice actions, such alleged injuries are only compensable if severe or serious and must be supported by expert medical proof. *Id.* Mulligan failed to establish that he suffered a severe or serious injury from Baker's negligent conduct and likewise failed to present any expert medical proof to support the claim. Mulligan argues that *Indiana Insurance Co. v. Demetre*, 527 S.W.3d 12 (Ky. 2017), precludes the necessity for expert proof in this case. We disagree. While *Demetre* is an insurance bad faith case, not attorney negligence, the Supreme Court nonetheless held that expert medical proof was still required in cases of intentional or negligent infliction of emotional distress. *Demetre*, 527 S.W.3d at 39. In this case, the alleged injuries are a direct result of Baker's alleged negligent conduct in the legal representation of Mulligan.

Based on the undisputed facts of this case, Mulligan's bare allegation of pain and suffering, directly attributable to Baker's actions apart from the underlying case, are not sufficient to sustain the claim.[8]  As the Supreme Court succinctly stated in *Osborne*:  "Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment will not suffice."  *Osborne*, 399 S.W.3d at 17.

Effectively, the jury instruction error resulted in a duplicative recovery for the pain and suffering damages that Mulligan was entitled to in the underlying action.  Accordingly, we conclude that the circuit court erred by instructing the jury upon damages for emotional pain and suffering caused by Baker's conduct (Verdict Form No. 4) in the malpractice case and reverse the jury's verdict thereupon.[9]

## G. Instruction No. 4 – Apportionment

Baker alleges that the trial court committed error by failing to instruct the jury to apportion liability between Mulligan, Baker, and the Poppe Law Firm. We disagree.

---

[8] Mulligan also argues that KRS 411.165 permits the award of pain and suffering based upon Baker's negligence.  Based on our review of the facts of this case, the statute provides no additional basis to award any damages against Baker, other than those damages Mulligan was entitled to in the underlying action.

[9] As will be discussed later in this Opinion, we affirm the damages awarded to Mulligan for pain and suffering based upon Officer Timothy O'Daniel's and Officer Wayne Kapanski's conduct in the underlying action.  However, we have reversed the award of damages for pain and suffering based upon Baker's malpractice in his representation of Mulligan in the underlying action.

As subsequently set forth in this Opinion, Baker's third-party claims against the Poppe Law Firm were properly dismissed by directed verdict; thus, the trial court correctly declined to instruct the jury to apportion liability to the law firm. And as for Mulligan, Baker failed to introduce evidence that Mulligan was negligent after Baker withdrew from the underlying action in federal court. Therefore, the trial court correctly declined to instruct the jury on apportionment.

## IV. DENIAL OF DIRECTED VERDICT – QUALIFIED IMMUNITY

Baker contends that the trial court erred by denying his motion for directed verdict as the claims against Officer O'Daniel and Officer Kapanski were barred by qualified immunity. In particular, Baker argues:

> [A]ll of Mulligan's underlying claims should be barred by Qualified Immunity, as would have been available defense by Officer O'Daniel in the underlying litigation, for a variety of reasons. Most critically, by Mulligan's various admissions in prior sworn testimony, judged from the perspective of a reasonable officer on the scene in September 2012, a reasonable jury could not find there was not sufficient articulable suspicion for the initial stop and probable cause for arrest for alcohol intoxication. Furthermore, a police officer in similar circumstance's perspective, by Mulligan's prior sworn testimony, would interpret his actions as resisting arrest justifying an application of minimal force. Despite Mulligan's description of the force used, application of minimal force is the most reasonable [the] jury could believe Mulligan credibly demonstrated.
>
> . . . .

> Given the extent, or lack thereof, of documented injuries to Mulligan . . . , [Mulligan] cannot point to any case that "clearly establishes" that it was a violation of the law for an officer in September 2012 to use minimal force, resulting in no injuries, using no weapons, to effectuate a mandatory arrest on an intoxicated subject actively resisting arrest. As a result, all of [Mulligan's] Fourth Amendment claims in the underlying action would have been dismissed because of Qualified Immunity.

Baker's Brief at 27-29.

As to claims alleging violations of the Fourth Amendment under 42 U.S.C. § 1983, an official may assert qualified immunity as a shield to such claims. *Browning v. Edmonson Cnty., Ky.*, 18 F.4th 516, 523 (6th Cir. 2021). Under the doctrine of qualified immunity, a government official who is performing a discretionary act is entitled to such immunity provided his conduct does not violate clearly established statutory or constitutional rights a reasonable person would have known. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). So, qualified immunity is not available if the official's conduct violates a clearly established statutory or constitution right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In this case, Mulligan clearly provided significant evidence that Officer O'Daniel lacked probable cause to arrest Mulligan, performed a search that lacked probable cause or reasonable suspicion of a crime, instituted criminal proceedings without probable cause, and that both Officer O'Daniel and Officer

-33-

Kapanski used excessive force to arrest Mulligan.  The evidence was provided by deposition before trial, and during trial, as witnesses testified as to the events surrounding Mulligan's arrest.  A reasonable juror could find that Officer O'Daniel and Officer Kapanski violated Mulligan's clearly established Fourth Amendment rights; consequently, the trial court did not err by denying Baker's motion for directed verdict and motion for summary judgment upon qualified immunity.  *See Pearson*, 555 U.S. at 232.

## V. *BATSON* VIOLATION

Baker next argues that the trial court committed error by concluding that Baker's use of a peremptory strike seeking to remove prospective Juror 15 violated *Batson v. Kentucky*, 476 U.S. 79 (1986).  Baker points out that he exercised peremptory strikes as to Juror 15 and Juror 18; thereafter, Mulligan challenged the use of the peremptory strikes as to these two Jurors.  According to Baker, he then offered race neutral reasons for the peremptory strikes.  As to Juror 15, Baker states that he informed the court that he struck this juror because the "juror worked in HR and would be addressing complaints and would be 'use[] to handling claims.'"  Baker's Brief at 30.  As to Juror 18, Baker states that he informed the trial court that he struck this juror because her son had interactions with police.  Baker argues that the trial court then improperly ruled that Baker's use of a peremptory strike upon Juror 15 violated *Batson*, 476 U.S. 79.  Baker

-34-

maintains that the trial court erroneously placed the burden on him to prove a race neutral basis for striking Juror 15; however, the burden should have been placed upon Mulligan to prove *prima facie* that a racial reason existed for striking Juror 15. And Baker asserts that "the trial court failed to render a ruling clear enough to discern, particularly with regards to step three of the *Batson* analysis" and that "the trial court bypassed step 3 of the *Batson* analysis entirely." Baker's Combined Response Brief at 42.

In *Batson*, 476 U.S. at 89, the United States Supreme Court held that the use of peremptory strikes to remove prospective jurors from the venire upon the basis of race offends the equal rights provision of the United States Constitution.[10] To determine if the equal protection clause was violated, the court must conduct a three-step analysis:

> First, the [challenging party] must make a prima facie showing that the [other party] has exercised peremptory challenges on the basis of race. . . . Second, if the requisite showing has been made, the burden shifts to the [other party] to articulate a race-neutral explanation for striking the jurors in question. . . . Finally, the trial court must determine whether the [challenging party] has carried his burden of proving purposeful discrimination.

---

[10] It is well-established that the holding in *Batson v. Kentucky*, 476 U.S. 79 (1986) equally applies to civil actions. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 628 (1991).

*Louisville Metro Gov't v. Ward*, 610 S.W.3d 295, 309 (Ky. App. 2020) (quoting

*Commonwealth v. Snodgrass*, 831 S.W.2d 176, 178 (Ky. 1992)).  The trial court is

in the best position to judge the motives behind a party's use of a peremptory

strike; thus, the trial court's decision will not be disturbed on appeal unless clearly

erroneous.  *Gray v. Commonwealth*, 203 S.W.3d 679, 691 (Ky. 2006); *Washington*

*v. Commonwealth*, 34 S.W.3d 376, 379-80 (Ky. 2000).

   As previously discussed in Footnote 3, we were not provided with the

video record evidencing the trial court's ruling on Mulligan's *Batson* challenge.  In

Baker's brief, he cites to the video record at 11:10 a.m. on March 14, 2022, for the

time Mulligan made the *Batson* challenge and at 11:12 a.m. for the time the trial

court rendered its ruling.  We have carefully examined the video record.  On

March 14, 2022, at 11:10 a.m., Mulligan asked the court to approach the bench at

which time the video stopped, and then at 11:17 a.m., the video resumes with the

trial court explaining to the jury that a mistake occurred in the numbering of jurors.

The trial court then instructed Juror 15 to replace Juror 14 on the jury.  But, we

have no recording evidencing Mulligan's precise *Batson* challenge or the trial

court's exact ruling on the *Batson* challenge.  In the absence of a complete record

for appellate review, we must presume that the missing record supports the trial

court's decision.  *Haney v. Stykes*, 688 S.W.3d 561, 565 (Ky. App. 2023).  As a

result, we are unable to conclude that the trial court ruling on the *Batson* challenge was clearly erroneous. *See Gray*, 203 S.W.3d at 691.

## VI. CHANGE OF VENUE/CONTINUANCE

Baker also argues that the trial court erred by failing to grant his motion for a continuance and motion for a change of venue. Baker points out that the trial herein occurred "in the immediate aftermath of the United States Justice Department ("DOJ") issuing its findings regarding racial injustice on the part of the Louisville Metro Police Department." Baker's Brief at 36. According to Baker, the Attorney General of the United States stated that "[t]he Justice Department has concluded that there is reasonable cause to believe that Louisville Metro and LMPD engage in a pattern or practice of conduct that violates the constitutional rights of the residents of Louisville – including by using excessive force [and] unlawfully discriminating against Black people." Baker's Brief at 36. Baker argues that the trial court should have either moved the trial to a different county or continued the trial until the news coverage abated. Baker asserts he was prejudiced by the trial court's failure to grant his motions. Baker points to testimony during trial by Mulligan that Baker was complicit in the justice system where widespread discrimination against African-Americans occured. Baker's Brief at 37. Additionally, Baker cites to Mulligan's testimony that if Baker had

publicized and pursued Mulligan's case to his satisfaction, the ensuing scrutiny of the LMPD might have prevented the death of Breonna Taylor.

In a civil action, KRS 452.010(2) provides that a party is entitled to a change of venue:

> [W]hen it appears that, because of the undue influence of his or her adversary or the odium that attends the party applying or his or her cause of action or defense, or because of the circumstances or nature of the case he or she cannot have a fair and impartial trial in the county.

The trial court's decision on a motion for change of venue will be reviewed for an abuse of discretion. *Arkk Properties, LLC v. Cameron*, 681 S.W.3d 133, 141 (Ky. 2023).

In response to Baker's argument that a change of venue was warranted, Mulligan points out that Baker questioned potential jurors and that no evidence exists that Baker did not have a fair and impartial trial in Jefferson County:

> During *voir dire*, Baker asked the potential jurors about black civilians and police interactions, the Black Lives Matter movement, whether jurors believed "police are being too mean, too rough," or whether they would "be in favor of black defendants or police officers, or anything like that." None of the venire indicated any response to these prompts.
>
> Baker specifically brought up the [Department of Justice] DOJ Report, telling the jury the Justice Department released a report the previous week and asked the jurors if anybody knew about the report. He

-38-

asked if this would affect any potential juror's decision in any way. There was no response from any potential juror to this prompt. There was no evidence any of the jurors were tainted by the DOJ Report, and no evidence it would influence their decision making, and Baker has never shown otherwise.

Mulligan's Combined Brief at 44.

It appears that the trial court believed that a *voir dire* examination of potential jurors was sufficient to discover if the jurors were biased or prejudiced by news coverage or by current events. And during *voir dire*, Baker questioned the potential jurors extensively to uncover potential prejudice or bias; however, no juror responded affirmatively to Baker's questions. In the end, Baker has failed to demonstrate that the trial court abused its discretion by denying his motion for a change of venue or continuance.

## VII. EXCESSIVE DAMAGES
## PAIN AND SUFFERING IN THE UNDERLYING ACTION

Baker argues that the trial court improperly denied his motion for a new trial based upon the excessiveness of the jury's award of damages in the underlying action. Baker maintains that the jury's damage award of $250,000 for pain and suffering was the result of passion and prejudice. In support thereof, Baker cites to "cumulative inflammatory testimony and innuendo [that] was rendered on the hot-button issue of police abuse of African-Americans." Baker's Brief at 40.

Under CR 59.01(d), a new trial may be granted upon the basis of excessive damages that appear to be the result of passion or prejudice. As an appellate court, our review is deferential to the trial court:

> The amount of damages is a dispute left to the sound discretion of the jury, and its determination should not be set aside merely because we would have reached a different conclusion. If the verdict bears any reasonable relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages.

*Hazelwood v. Beauchamp*, 766 S.W.2d 439, 440 (Ky. App. 1989).

As we have reversed the jury's award of $250,000 for Mulligan's pain and suffering damages caused by Baker's malpractice, there only remains the jury's award of $250,000 for Mulligan's pain and suffering caused by Officer O'Daniel's and Officer Kapanski's conduct. Considering the evidence adduced at trial, it is clear that the award of $250,000 in damages for pain and suffering in the underlying action bears a reasonable relationship to the pain and suffering endured by Mulligan and was not the result of passion or prejudice. Mulligan testified extensively concerning the pain and suffering he endured as a result of Officer O'Daniel's and Officer Kapanski's use of excessive force and violation of Mulligan's civil rights on the night he was arrested and thereafter. The jury instructions on this issue were sufficient. Consequently, we conclude that the trial

court did not abuse its discretion by denying Baker's motion for new trial for the excessiveness of the jury's award of damages in the underlying action.

## VIII. DISQUALIFICATION OF MULLIGAN'S COUNSEL

Baker maintains that the trial court erroneously denied his motion to disqualify Mulligan's legal counsel. Baker argues that the trial court should have disqualified both Hans Poppe and Kirk Laughlin as they might have been called as a witness to testify at trial by Baker. Baker points out that the trial court ultimately disqualified Laughlin but then permitted Laughlin to be seated near his colleagues during trial. However, it is uncontroverted that Baker admittedly did not call either Laughlin or Poppe as a witness during trial. Given that Baker did not call either Laughlin or Poppe as witnesses at trial, any error is harmless.[11]

## IX. DIRECTED VERDICT INDEMNIFICATION/ THIRD PARTY CLAIM

Baker asserts that the trial court erred in granting a directed verdict on his indemnification and third-party claims against Laughlin and the Poppe Law Firm. In his appellant's brief, Baker's entire argument consists of only five sentences, and he cites no legal authority therein. Baker's Brief at 39. Baker's argument plainly lacks supportive factual detail and sufficient legal analysis.

---

[11] When seeking review of a trial court's ruling on a motion to disqualify legal counsel, the primary method is to file a writ of prohibition/mandamus. *See Marcum v. Scorsone*, 457 S.W.3d 710, 716-17 (Ky. 2015); *Commonwealth v. Maricle*, 10 S.W.3d 117, 120-22 (Ky. 1999).

Simply put, Baker's argument is cursory and perfunctory. It is not the function of this Court to research, construct, or articulate a party's arguments on appeal. *Harris v. Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012) (citing *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996)).[12] We, thus, perceive no error.

We view any remaining contentions of error in Baker's direct appeal to be moot or without merit.

### CROSS-APPEAL NO. 2023-CA-0740-MR

Mulligan alleges that the trial court erroneously granted a directed verdict upon his claim for punitive damages. Mulligan believes that he was entitled to have the jury instructed upon punitive damages based upon Baker's conduct. Mulligan argues that punitive damages are proper because Baker was grossly negligent in his representation of Mulligan. When viewing the evidence most favorable to him, Mulligan maintains that a reasonable juror could have found that Baker was grossly negligent and that he was entitled to an award of punitive damages. Mulligan cites to evidence adduced at trial, which included that Baker withdrew from representing Mulligan in the underlying action; that Baker failed to research the applicable statute of limitations which led to the dismissal of

---

[12] In the notice of appeal filed in this case, Kirk Laughlin and the Poppe Law Firm were named appellees, based on the directed verdict of Baker's third-party claim. However, neither party filed an appellee brief as required by the Kentucky Rules of Appellate Procedure (RAP) 30 and 32. Notwithstanding, they improperly addressed this issue in Mulligan's appellee brief at page 45-47. Given Baker's failure to articulate a valid argument on appeal, we have declined to impose sanctions permitted under RAP 31(H)(3).

all claims except one in federal court; that Baker failed to name Officer Kapanski in the complaint; that Baker failed to hire any expert witness; and that Baker failed to take any depositions in the underlying action.

The Kentucky Supreme Court has recognized that punitive damages may be recovered in a legal malpractice action when the damages are based upon the attorney's conduct. *Osborne*, 399 S.W.3d at 22-23. To recover punitive damages, it must be demonstrated that "the attorney was grossly negligent in handling the case and acted with oppression, fraud, or malice." *Id.* at 23; *see also* KRS 411.184(2). And a directed verdict is proper only if "there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Jewish Hosp. & St. Mary's Healthcare, Inc. v. House*, 563 S.W.3d 626, 630 (Ky. 2018) (quoting *Argotte v. Harrington*, 521 S.W.3d 550, 554 (Ky. 2017)).

During trial, there was certainly an abundance of evidence showing that Baker's representation of Mulligan was negligent in the underlying action. Baker admitted that he mistakenly allowed the statute of limitations to expire on all but one of Mulligan's claims. Moreover, there was evidence that Baker also may have been negligent in other aspects of his representation of Mulligan in the underlying civil action. Nevertheless, we are unable to conclude that the evidence also demonstrated gross negligence, fraud, oppression, or malice committed by

Baker. To the contrary, there is insufficient evidence to support this argument. In this respect, we are of the opinion that the trial court properly directed a verdict upon Mulligan's claim for punitive damages.

## SUMMARY

In Appeal No. 2023-CA-0707-MR, we reverse the March 21, 2023, Judgment as to the award of $250,000 for pain and suffering based upon Baker's malpractice conduct but affirm the award of $250,000 for pain and suffering endured by Mulligan as the result of the conduct of LMPD officers as asserted in the underlying action, to which Mulligan was entitled but for Baker's negligence. We also affirm on all other grounds raised by Baker in his direct appeal and by Mulligan in Cross-Appeal No. 2023-CA-0740-MR.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEFS FOR APPELLEE/CROSS-APPELLANT: |
|---|---|
| Kenneth H. Baker, *Pro Se* Louisville, Kentucky | Hans G. Poppe Kirk A. Laughlin Taylor K. Richard Louisville, Kentucky |

-44-